REVISED DECEMBER 26, 2002

**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 01-11393**
_____

**PHILIP J. FRANK,**

**Plaintiff-Appellee,**

**versus**

**DELTA AIRLINES INC.; ET AL.,**

**Defendants,**

**DELTA AIRLINES INC.,**

**Defendant-Appellant.**

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

December 3, 2002

Before DAVIS, JONES and SMITH, Circuit Judges.

EDITH H. JONES, Circuit Judge:

### BACKGROUND

Philip Frank worked for Delta Airlines, Inc. as an aircraft mechanic in Dallas, Texas. Upon being selected for a random drug test performed by LabOne, Inc. in February 2000, Frank produced a urine sample that contained traces of pyridine, a drug-masking agent. Delta interpreted Frank's adulterated sample as a

"refusal to test," fired him, and reported his "refusal to test" to the Federal Aviation Administration (FAA). Frank sued under three Texas-law theories: negligence, intentional infliction of emotional distress, and defamation. The district court denied Delta's Rule 12(b)(6) motion to dismiss for failure to state a claim, but the district court and this Court approved an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

The issue on appeal is whether Frank's state-law tort claims are preempted by 49 U.S.C. § 45106 of the Omnibus Transportation Employee Testing Act of 1991 (OTETA) and FAA regulations.[1] We hold that Frank's state-law tort claims are expressly preempted by federal law and reverse the district court's judgment.

## DISCUSSION

This court reviews a 12(b)(6) ruling de novo. Shipp v. McMahon, 234 F.3d 907, 911 (5th Cir. 2000). "When ruling on a 12(b)(6) motion, the court must liberally construe the complaint in favor of the plaintiff and assume the truth of all pleaded facts." Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002). "The court may dismiss a claim when it is clear that the plaintiff can prove no

---

[1]Unless otherwise specified, all references to FAA regulations in this opinion refer to the regulations in effect at the time of the events upon which Frank bases his claims. Citations to 14 C.F.R. pt. 121, app. I refer to the regulations revised as of January 1, 2000. Citations to 49 C.F.R. pt. 40 refer to the regulations revised as of October 1, 1999.

set of facts in support of his claim that would entitle him to relief." Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999). Preemption by federal law of a common law cause of action is a question of law reviewed de novo. See Meredith v. Louisiana Fed'n of Teachers, 209 F.3d 398, 404 (5th Cir. 2000).

Federal law will override state law under the Supremacy Clause when (1) Congress expressly preempts state law; (2) Congressional intent to preempt may be inferred from the existence of a pervasive federal regulatory scheme; or (3) state law conflicts with federal law or its purposes. English v. Gen. Elec. Co., 496 U.S. 72, 78-79, 110 S. Ct. 2270, 2275, 110 L. Ed. 2d 65, 74 (1990). This case involves express preemption.[2] "'[T]he purpose of Congress is the ultimate touchstone' in every pre-emption case." Medtronic, Inc. v. Lohr, 518 U.S. 470, 485, 116 S. Ct. 2240, 2250, 135 L. Ed. 2d 700, 716 (1996).

Provisions preempting state law are abundant in this area, while corresponding clauses saving state law are modest. Beginning in 1988, the FAA prescribed an Anti-Drug Program for Personnel Engaged in Specified Aviation Activities, for which it issued comprehensive regulations covering, *inter alia*, the types of required drug testing, the selection of employees to be tested,

---

[2] Delta also argues that Frank's state law claims are impliedly preempted. We do not reach this alternative position.

qualifications for testing laboratories, the release of test results on individuals, administrative procedures to challenge the results, and the reporting of test results and other information to FAA. See 53 Fed. Reg. 47024 (Nov. 21, 1988);[3] 14 C.F.R. pt. 121, app. I; 49 C.F.R. pt. 40. The regulations stated their preemptive state-law savings intent as follows:

> XI.  Preemption
>
> A.  The issuance of these regulations by the FAA preempts any State or local law, rule, regulation, order, or standard covering the subject matter of this rule, including but not limited to, drug testing of aviation personnel performing sensitive safety- or security-related functions.
>
> B.  The issuance of these regulations does not preempt provisions of State criminal law that impose sanctions for reckless conduct of an individual that leads to actual loss of life, injury, or damage to property whether such provisions apply specifically to aviation employees or generally to the public.

14 C.F.R. pt. 121, app. I § XI.A and B (1989). The FAA regulations have remained for all practical purposes identical since that time.

Congress reinforced and confirmed FAA's authority when, in 1991, it enacted OTETA to combat drug and alcohol abuse by individuals employed in the airline industry and, among other things, authorized random drug testing of employees in safety-

---

[3]In 1994, the FAA regulations were amended to comply with OTETA and to clarify various requirements. Anti-Drug Program for Personnel Engaged in Specified Aviation Activities, 59 Fed. Reg. 42922 (Aug. 19, 1994).

sensitive positions.[4]   See OTETA, Pub. L. No. 102-143, 105 Stat. 952, 952-956 (1991) (codified as amended at 49 U.S.C. §§ 45101-45106).   One provision permitted the FAA to "continu[e] in effect" pre-existing drug testing regulations.[5]   Further, after minor intervening linguistic amendments, the preemptive section of OTETA currently provides:

> Effect on State and local government laws, regulations, standards, or orders.  A State or local government may not prescribe, issue, or continue in effect a law, regulation, standard, or order that is inconsistent with regulations prescribed under this chapter.  However, a regulation prescribed under this chapter does not preempt a State criminal law that imposes sanctions for reckless conduct leading to loss of life, injury, or damage to property.  49 U.S.C. § 45106(a).

---

[4]Aircraft mechanics, like Frank, are included in the category of employees who perform safety-sensitive functions.  14 C.F.R. pt. 121, app. I § III.E.

[5]49 U.S.C. § 45106(c) currently states:

Other regulations allowed.  This section does not prevent the Administrator from continuing in effect, amending, or further supplementing a regulation prescribed before October 28, 1991, governing the use of alcohol or a controlled substance by airmen, crewmembers, airport security screening employees, air carrier employees responsible for safety-sensitive functions (as decided by the Administrator), or employees of the Administration with responsibility for safety-sensitive functions.

Amendments to the statute since the events upon which Frank bases his claims do not substantively affect the statute's applicability in this case.  In 2001, Pub. L. No. 107-71, § 139(3), 115 Stat. 640 replaced the term "contract employees" with "employees."

Together, the statute and regulations confirm the preeminence of FAA's drug-testing responsibility over any applicable state regulation. By overriding any state "law, regulation, standard, or order" that is "inconsistent" with FAA's regulations, <u>see</u> § 49 U.S.C. § 45106(a), <u>supra</u>, Congress accomplished three things. First, it supported the preemption, where necessary, of state common-law negligence claims. <u>See</u> <u>CSX Transp., Inc. v. Easterwood</u>, 507 U.S. 658, 664, 113 S. Ct. 1732, 1737-38, 123 L. Ed. 2d 387, 396-97 (1993) ("law, rule, regulation, order, or standard" included common-law negligence claims). Second, it approved FAA's authority to issue pre-emptive regulations both before and after OTETA was passed, with the sole limitation against preempting certain state criminal laws. Further, the narrow savings language implied a broad scope for federal preemption, since an exception for state criminal laws would hardly have seemed necessary if state law were only narrowly preempted. <u>See</u> <u>Forsyth v. Barr</u>, 19 F.3d 1527, 1543 (5th Cir. 1994) (preemption provisions and savings clauses should be read together without rendering either superfluous).[6]

---

[6] We are aware of the Supreme Court's recent decision in <u>Sprietsma v. Mercury Marine</u>, 537 U.S.___, 2002 U.S. LEXIS 9067 (U.S. Dec. 3, 2002), holding that the Federal Boat Safety Act (FBSA) does not preempt common-law claims, and conclude that it does not control the outcome of this case for three reasons. First, although the Supreme Court concluded that the FBSA's express preemption language does not encompass common-law claims, the preemption language in the FAA regulations is more similar to the Federal Railroad Safety Act language held by the Supreme Court in <u>CSX</u> to include common-law negligence claims. Second, the FBSA's broad savings clause implies

Notwithstanding these indicia of a broad preemptive intent, Frank contends that his claims cannot have been preempted. He asserts that the statutory language mandates narrower preemption than FAA's regulations; that "covering the subject matter," as contained in the regulations, represents a narrow basis for preemption; and that his claims are not "covered" by the FAA's drug testing regime. We address each of these arguments in turn.

Frank's statutory argument is simply incorrect. Focusing on the above-noted provision that preempts any state law found "inconsistent" with FAA's regulations, he argues that his claims are not "inconsistent" with FAA's drug testing regulations; indeed, only a competing regime of state-prescribed drug testing regulations would, in his view, be preempted. What Frank misses, however, is that in 49 U.S.C. § 45106(c), supra n.5, Congress expressly included the agency's pre-existing preemption regulations among those that could be continued in effect. This point has been demonstrated above. It is to those regulations that one must turn in order to analyze the scope of preemption.

Frank moves to stronger ground when he attributes a narrow preemptive purpose to the "covering the subject matter"

that there are a number of common-law claims to save, while the narrow savings clause in this case suggests a broad scope for federal preemption. Finally, this case involves the preemptive effect of adopted FAA regulations as opposed to the preemptive effect of the Coast Guard's decision not to regulate propeller guards in Sprietsma.

7

preemption in FAA's regulations.  See 14 C.F.R. pt. 121, app. I § XI.A, supra.  Analogous language in the Federal Railroad Safety Act of 1980 (FRSA) has been held to require a fairly close correspondence between the federal regulations and the preempted state claim.  Frank relies on two FRSA cases from this circuit to support his argument that OTETA and FAA regulations do not preempt his state law claims.  See United Transp. Union v. Foster, 205 F.3d 851 (2000); Rushing v. Kansas City S. Ry. Co., 185 F.3d 496 (1999). The FRSA provision, like that of the FAA, prescribes preemption of state law "covering the subject matter" of federal regulations.[7] In Foster and Rushing, this court applied the Supreme Court's interpretation of that term as requiring federal regulations to "substantially subsume the subject matter of the relevant state law" for preemption to lie.  Foster, 205 F.3d at 860 (quoting CSX

---

[7] The FRSA preemption provision reads:

Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety when the law, regulation, or order--
(1) is necessary to eliminate or reduce an essentially local safety hazard;
(2) is not incompatible with a law, regulation, or order of the United States Government; and
(3) does not unreasonably burden interstate commerce.

49 U.S.C. § 20106.

Transp., Inc. v. Easterwood, 507 U.S. 658, 664, 113 S. Ct. 1732, 1738, 123 L. Ed. 2d 387, 397 (1993)); Rushing, 185 F.3d at 515 (same). In applying FRSA preemption, this court followed the Supreme Court in "eschew[ing] broad categories such as 'railroad safety,' focusing instead on the specific subject matter contained in the federal regulation." Foster, 205 F.3d at 860 (citing CSX, 507 U.S. at 665-75, 113 S. Ct. at 1738-43, 123 L. Ed. 2d at 397-404); see also Rushing, 185 F.3d at 515 (same).

This court concluded in both Rushing and Foster that an FRSA regulation covering the sound capacity of audible signaling devices, 49 C.F.R. § 229.129, does not "cover" or "substantially subsume" the subject matter of when such devices are sounded. In Rushing, this court held that the FRSA regulation did not as a matter of law preempt a nuisance claim based on the blowing of train whistles at night, Rushing, 185 F.3d at 516; and we held in Foster that the same FRSA regulation did not preempt a Louisiana state statute requiring the sounding of an audible signal by train operators at specified locations, Foster, 205 F.3d at 862. Nevertheless, Foster determined that another aspect of the regulations preempted a state statute requiring locomotive engines to be equipped with a signaling device that could be heard at a distance of not less than one-quarter mile, id. at 861, and that FRSA regulations governing the use of information on event

9

recorders preempted a state statute requiring railroad employees to notify officers investigating train accidents of the existence of event recorders on trains, id. at 863.

While Rushing and Foster provide some support for Frank's argument, they do not finally control this case. The analysis in every preemption case differs depending on the language, structure, and subject matter of the provisions at issue. Although the FRSA and FAA regulatory preemption provisions both use the language "covering the subject matter," there are notable differences between the provisions and their respective subject matter. For example, the Supreme Court observed that the FRSA "displays considerable solicitude for state law" in that the term "covering" in the FRSA preemption provision is "both prefaced and succeeded by express saving clauses." CSX, 507 U.S. at 665, 113 S. Ct. at 1738, 123 L. Ed. 2d at 397. In contrast, OTETA and the FAA regulations each contains a single savings clause that exempts only state criminal laws from preemption, implying that state law claims are otherwise broadly preempted. Another difference between FRSA and FAA preemption lies in the fact that there is a stronger federal interest in aviation safety than there is in railroad safety. While states have traditionally exercised responsibility and

authority regarding certain areas of railroad safety,[8] aviation safety has largely been a matter of highly regulated federal concern. French v. Pan Am Express, Inc., 869 F.2d 1, 5 (1st Cir. 1989).

Most important, in Foster and Rushing, without guidance from the FRSA, this court had to determine the subject matter of the preempting regulations and consequently drew lines between subjects such as the sound capacity of audible signaling devices and when such devices are sounded. Here, the FAA preemption provision defines the preempted subject matter of the regulations as "the subject matter of 14 CFR parts 65, 121, and 135, including but not limited to, drug testing of aviation personnel performing safety-sensitive functions." 14 C.F.R. pt. 121, app. I § XI.A (emphasis added). Deference to state law claims is not at all protected by this language in the way that the analogous FRSA provision is hedged about. The "subject matter" of "drug testing of aviation personnel" is far broader than that prescribed in FRSA.

All this said, even if we construe "covering the subject matter" as the Supreme Court did in CSX, and eschew the broad subject matter of "drug testing" for the specific subject matter of Frank's claims and FAA regulations under the "substantially

---

[8]For example, states have traditionally had responsibility and authority regarding grade crossing improvements. See CSX, 507 U.S. at 665, 113 S. Ct. at 1738, 123 L. Ed. 2d at 397 n.5.

11

subsume" test, we conclude that FAA regulations in any event preempt Frank's state law claims.

Frank's complaint sets forth three tort law causes of action: negligence, intentional infliction of emotional distress, and defamation. First, Frank alleges that Delta was negligent in utilizing LabOne to administer the drug testing of Delta employees, as the company knew or should have known that LabOne administered improper tests and incorrectly interpreted the results. Both the selection of a laboratory to perform drug testing of employees in safety-sensitive functions and the procedures for such testing are "substantially subsumed" by FAA regulations. The regulations require employers to use laboratories certified by the Department of Health and Human Services pursuant to the DHHS "Mandatory Guidelines for Federal Workplace Drug Testing Programs"; regulations also require compliance with detailed testing procedures set forth in 49 C.F.R. part 40. See 14 C.F.R. pt. 121, app. I § I. Alleged victims of improper drug testing can seek recourse through an administrative procedure that includes judicial review in the federal courts.[9] Allowing Frank to avail himself of

---

[9]See, e.g., 14 C.F.R. pt. 121, app. I § VI.C. Employee Request for Test of a Split Specimen. Further, individuals such as Frank may file a written complaint with the FAA Administrator. 49 U.S.C. § 46101(a)(1). If there are reasonable grounds for an investigation, the Administrator will investigate the complaint, id., and can order depositions, subpoena witnesses and records, administer oaths, examine witnesses, and receive evidence, 49 U.S.C. § 46104. Upon finding a violation, the Administrator "shall issue an order to compel compliance." 49 U.S.C. § 46101(a)(4). Review of an

Texas's negligence regime would impose duties on Delta that are independent from and duplicative of the duties FAA imposes on airline industry employers.[10]

Frank's complaint also pleads a claim for intentional infliction of emotional distress (IIED) based on Delta's combined actions regarding his drug test. Again, FAA regulations "substantially subsume" the subject matter of Delta's alleged actions and preempt Frank's IIED claim.[11] Specifically, Frank's IIED claim alleges that Delta, intentionally or recklessly, falsely accused Frank of adulterating his specimen and refusing to be tested. Within 49 C.F.R. part 40, Section 40.25(e)(2) enumerates the exclusive grounds for believing that an individual may alter his specimen. The presence of pyridine in Frank's sample could fall under § 40.25(e)(2)(iii) as "conduct clearly and unequivocally indicating an attempt to substitute or adulterate the sample."

---

order can be sought in a U.S. Court of Appeals, and the decision of the U.S. Court of Appeals can be reviewed by the Supreme Court under 28 U.S.C. § 1254. 49 U.S.C. § 46110.

[10]Cf. Norfolk S. Ry. Co. v. Shanklin, 529 U.S. 344, 353, 120 S. Ct. 1467, 1474, 146 L. Ed. 2d 374, 383 (2000); CSX, 507 U.S. at 671, 113 S. Ct. at 1741, 123 L. Ed. 2d at 401 (Regulations promulgated through the Federal Highway Administration, 23 C.F.R. §§ 646.214(b)(3) and (4), "cover the subject matter of state law which, like the tort law on which respondent relies, seeks to impose an independent duty on a railroad to identify and/or repair dangerous crossings.").

[11]Even if federal law did not preempt Frank's IIED claim, under Texas law, termination from employment without more, even if the termination is wrongful, does not give rise to a claim of IIED. Brewerton v. Dalrymple, 997 S.W.2d 212, 216-17 (Tex. 1999); Southwestern Bell Mobile Sys., Inc., 971 S.W.2d 52, 54 (Tex. 1998).

Similarly, 14 C.F.R. part 121, app. I § II defines "refusal to submit" as conduct that clearly obstructs the testing process; the presence of a masking agent such as pyridine in a testing sample could clearly obstruct the testing process.

Frank's IIED claim is also based on allegations that Delta refused to administer a proper drug test, improperly interpreted his test results, improperly relied on tests that have no scientific validity under the circumstances, and failed to consider circumstances that affected his test. FAA regulations "substantially subsume" the subject matter of all of these allegations, as they prescribe detailed specimen collection procedures and detailed laboratory analysis procedures, and they mandate the design, implementation, and review of quality assurance procedures to monitor each step of the drug-testing process. 49 C.F.R. §§ 40.25-40.31.

Delta's refusal to retest Frank is yet another ground for Frank's IIED claim that is "substantially subsumed" by FAA regulations. Section 40.25(f)(16) of 49 C.F.R. specifies when a second sample shall be taken, and various sections of 14 C.F.R. part 121, app. I specify when retesting is either required or allowed. See, e.g., 14 C.F.R. pt. 121, app. I § V.F (requiring retesting following a refusal to submit or a verified positive drug test result before an employee can return to perform a safety-

14

sensitive function); id. § VI.C (allowing employee to request testing of a split specimen if test of primary specimen results in a confirmed positive test result).[12]

Frank's claim of defamation per se alleges that Delta published information regarding Frank's "refusal to test" within Delta and to the FAA either knowing that the information was false or with reckless disregard for its falsity. Frank also claims that Delta could have reasonably foreseen that Frank would have to self-publish the slanderous information when seeking other employment. FAA regulations require employers to notify the FAA of an employee's refusal to submit to a drug test and also govern the release of drug-testing results to third parties. 14 C.F.R. pt. 121, app. I § VI.D-E. In passing OTETA and approving preexisting FAA regulations, Congress recognized the need for adequate safeguards to protect an individual's right of privacy and to avoid harassment and undue harm to an individual's reputation or career development. See OTETA, Pub. L. No. 102-143, 105 Stat. 952, 953 (1991). If Delta violated any FAA regulations and improperly disseminated the results of Frank's drug test, his proper recourse is through the administrative regime. As with the other tort law

---

[12]Finally, Frank's IIED claim is based on Delta's publication of erroneous test results that allegedly ruined his career as an aircraft mechanic. Delta's publication of Frank's test results is "substantially subsumed" by regulations that will be discussed in connection with Frank's defamation claim.

15

claims, FAA regulations "substantially subsume" the subject matter of Frank's defamation claim and expressly preempt it.

## CONCLUSION

Frank's claims of negligence, intentional infliction of emotional distress, and defamation are expressly preempted by 49 U.S.C. §45106(c) and 14 C.F.R. pt. 121, app. I § XI.A. The district court's denial of Delta's 12(b)(6) motion to dismiss for failure to state a claim is REVERSED and judgment is RENDERED for Delta.

**REVERSED** and **RENDERED**.

16