IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 4, 2007

Charles R. Fulbruge III
Clerk

No. 06-11182

LISA ANN CARDEN, Individually and for and on
behalf of those entitled to recover for the wrongful
death on behalf of Alexa Lee Wilson;
RONALD LEE WILSON, II,

Plaintiffs-Appellants,

v.

GENERAL MOTORS CORPORATION,

Defendant-Appellee.

-------------------------------------------------------------------------------------------------

RONALD LEE WILSON, II, Individually,
and as an Heir to Alexa Lee Wilson,

Plaintiff-Appellant,

v.

GENERAL MOTORS CORPORATION,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Texas

Before JONES, Chief Judge, and DeMOSS and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

I. Factual and Procedural Background

On June 17, 2004, Ronald Lee Wilson, II, was driving a 1999 Pontiac Grand Am when it was struck near the left rear door by another vehicle. His daughter, twelve year-old Alexa Wilson, was seated in the rear center seat at the time. This position was equipped with a lap-only seat belt, which Alexa was wearing at the time of the accident. As a result of the impact, Alexa sustained serious injuries which led to her death.

Plaintiffs-Appellants Lisa Ann Carden, decedent's mother, and Ronald Lee Wilson, II, (hereinafter "Carden and Wilson") filed suit against General Motors Corporation ("GM") under Texas tort law. Appellants claimed that the 1999 Pontiac Grand Am was defectively and negligently designed because: (1) the rear center position of the vehicle was equipped with a lap-only seat belt ("Type 1 seat belt") as opposed to a lap/shoulder belt ("Type 2 seat belt"); (2) the rear center seat belt was equipped with a manual adjusting device, rather than a retractor; and (3) the vehicle lacked side impact airbags or other side impact protections. Carden and Wilson also brought a defective marketing claim, arguing that the vehicle lacked adequate warnings and instructions associated with the vehicle's use. The district court found that Carden's and Wilson's seat belt claims were preempted and granted summary judgment to GM. Subsequently, Carden and Wilson agreed to dismiss their remaining claims. Carden and Wilson timely appeal the district court's grant of summary judgment to GM. For the following reasons we affirm.

## II. Discussion

### A.

Federal Motor Vehicle Safety Standard ("FMVSS") 208 was promulgated by the National Highway Traffic Safety Administration ("NHTSA") under the authority of the National Traffic and Motor Vehicle Safety Act of 1966 (the "Safety Act"). 15 U.S.C. § 1391 et seq., recodified as amended, 49 U.S.C. § 30101 et seq. The Safety Act was enacted to "reduce traffic accidents and death and

injuries resulting from traffic accidents." 49 U.S.C. § 30101. Federal Motor Vehicle Safety Standards implement the Safety Act "by specifying vehicle crash worthiness requirements . . . [and] by specifying equipment requirements for active and passive restraint systems." 49 C.F.R. § 571.208.S2 (1996). FMVSS therefore establishes the types of passenger restraint systems which car and truck manufacturers must install in their vehicles. It is undisputed that at the time the 1999 Pontiac Grand Am was manufactured, FMVSS 208 required that manufacturers install either a lap-only seat belt or the lap/shoulder belt in a rear center position.

Carden and Wilson argue that the district court erred in finding that their seatbelt claims where preempted by FMVSS 208 for two reasons. First, they assert that the regulation sets a minimum standard and therefore does not exert preemptive effect absent some regulatory policy that would be undermined by the imposition of common law liability. Second, Carden and Wilson contend that NHTSA's decision not to mandate lap/shoulder belts in the rear center seat does not give rise to preemption analysis. GM argues that because federal law gave manufacturers the option between lap-only and lap/shoulder belts, a state common law suit that would effectively foreclose one of these options is preempted. This court reviews the district court's preemption analysis de novo. Frank v. Delta Airlines Inc., 314 F.3d 195, 197 (5th Cir. 2002).

Under the Supremacy Clause, federal law will preempt state law when Congressional intent to preempt may be inferred from the existence of a pervasive federal regulatory scheme, or when state law conflicts with federal law or its purposes. AT&T Corp. v. Pub. Util. Comm'n of Tex., 373 F.3d 641, 645 (5th Cir. 2004) (citation omitted). Actual conflict between state and federal law exists where "the federal scheme expressly authorizes an activity which the state scheme disallows." Wells Fargo Bank of Tex. v. James, 321 F.3d 488, 491 n.3 (5th Cir. 2003). The question before this court is whether Appellants' state common

law tort claim actually conflicts with FMVSS 208, and is thus preempted by federal law. We conclude that it is.

In Geier v. American Honda Motor Co., Inc., 529 U.S. 861 (2000), the Supreme Court was confronted with essentially the same question presently before this court: whether FMVSS 208 preempted a state common law tort claim. In that case, an injured motorist brought a defective design action against an automobile manufacturer under District of Columbia tort law, arguing that the manufacturer was negligent for failing to equip the automobile with driver's side airbags. Geier, 529 U.S. at 865. The Court interpreted the petitioners' claim as imposing a duty on the manufacturer to have installed airbags in their vehicles rather than another passive restraint system, and in turn, as a requirement that all manufacturers of similar cars also install airbags. The Court held that the petitioners' claim actually conflicted with FMVSS 208, explaining that the Department of Transportation's comments accompanying the promulgation of FMVSS 208 "make clear that the standard deliberately provided the manufacturer with a range of choices among different passive restraint devices." Geier, thus, compels the conclusion that a state tort suit that would foreclose a safety option intentionally left to vehicle manufacturers by Federal Motor Vehicle Safety Standards is preempted. See Griffith v. Gen. Motors Corp., 303 F.3d 1276, 1282 (11th Cir. 2002) ("[U]nder Geier, when a Federal Motor Vehicle Safety Standard leaves a manufacturer with a choice of safety device options, a state suit that depends on foreclosing one or more of those options is preempted."); Hurley v. Motor Coach Indus., Inc., 222 F.3d 377, 383 (7th Cir. 2000).

Carden and Wilson attempt to distinguish their claims from those in Geier, arguing that their claims are consistent with the policy objectives identified by the NHTSA because the agency never enunciated any specific regulatory policy for allowing manufacturers to install either lap belts or lap/shoulder belts. We disagree. A review of the regulatory and rule making history of FMVSS 208

supports the conclusion that the NHTSA's decision to allow car manufacturers the option to install either lap-only or lap/shoulder seat belts in the rear center seating position of passenger vehicles was deliberate, and the agency identified specific policy reasons for its decision. In 1967, when FMVSS 208 was initially promulgated, the DOT required either lap-only or lap/shoulder seat belts in each seating position in passenger vehicles. 32 Fed. Reg. 2408, 2415 (Feb. 3, 1967). As technology advanced and seatbelt use became more widespread, seatbelt requirements evolved. In 1989, noting the decreased cost and increased use of seatbelts in rear seating positions, the NHTSA amended FMVSS 208 to require the use of lap/shoulder seat belts in rear outboard seating. 54 Fed. Reg. 46257-01 (Nov. 2, 1989). The commentary preceding the final rules indicates that the NHTSA considered comments suggesting that lap/shoulder seat belts be required in the rear center seating position as well, but decided to leave manufacturers the option to select between lap-only and lap/shoulder belts.[1] Id. at 46258. In excluding the rear center seat from this requirement, the agency explained that "there [were] more technical difficulties associated with any requirement for lap/shoulder belts at center rear seating positions, and that lap/shoulder belts at center rear seating positions would yield small safety benefits and substantially greater costs, given the lower center seat occupancy rate and the more difficult engineering task." Id.[2] Based on this language, it is clear that the agency's

---

[1] In 2002, Anton's Law was signed into legislation. Pub. L. No. 107-318. Anton's Law directed NHTSA to complete rule-making within two years that would require the installation of lap/shoulder belts in all rear seating positions. Id. at § 5. The NHTSA promulgated a new version of FMVSS 208, requiring that lap/shoulder belts be phased into all passenger vehicles over a three year period beginning in September 2005. 69 Fed. Reg. 70904-01 (Dec. 8, 2004). This legislation, however, has no bearing on this Court's preemption analysis in this case as we look to the version of FMVSS 208 in effect at the time the 1999 Pontiac Grand Am was manufactured.

[2] Moreover, FMVSS's extensive rule making history indicates that child safety concerns also played a part in the decision not to require lap/shoulder belts in rear seating positions. Specifically, the NHTSA struggled to find balance between seat belt options in rear seating positions that could accommodate adult passengers and also properly restraint child safety

decision was deliberate and based on managing technological constraints and cost efficiency.

Carden and Wilson also contend that Sprietsma v. Mercury Marine, 537 U.S. 51 (2002) is controlling, not Geier. In Sprietsma, the Supreme Court considered whether the U.S. Coast Guard decision not to adopt a regulation requiring propeller guards on motorboats preempted a claim alleging an engine was defectively designed because it was not equipped with propeller guards. The Court held that the claim was not preempted, reasoning that although the Coast Guard intentionally declined to require propeller guards, it did not convey an authoritative message of a federal policy against them. Id. at 64. Carden and Wilson argue that the NHTSA's decision to allow manufacturers the option between lap-only belts and lap/shoulder belts is essentially the same as the U.S. Coast Guard's decision in Sprietsma. This argument is without merit. Sprietsma involved a complete absence of regulatory action, which was not the case here. As discussed above, the NHTSA identified particular policy reasons for its decision to allow manufacturers the option of selecting between the two seat belt designs, and included this option as a part of a comprehensive regulatory scheme. See, e.g., Frank, 314 F.3d at 199 n.6 (5th Cir. 2002) (distinguishing Sprietsma and explaining that Frank involved "the preemptive effect of adopted FAA regulations as opposed to the preemptive effect of the Coast Guard's decision not to regulate propeller guards."). Thus, Sprietsma does not control.

The rule-making and legislative history of FMVSS 208 indicates that the decision to allow manufacturers the option of selecting either lap-only or

---

seats. See, e.g., 49 Fed. Reg. 15241, 15241-15242 (April 18, 1984) ("The installation of Type 2 belts in rear outboard seating positions would made the installation of conventional child safety seat much less convenient than with current Type 1 belt."); 64 Fed. Reg. 10786, 10788 (Mar. 5, 1999) (discussing the difficulty of designing seat belts that both restrain older children, teenagers and adults and tightly secure child seats). The NHTSA has since promulgated standards that attempt to address these concerns with child safety by using devices other than seat belts. See 49 C.F.R. § 571.213.

lap/shoulder belts was deliberate and for specific policy reasons, particularly the technological problems associated with requiring the installation of lap/shoulder belts, and the resulting cost. Because Carden's and Wilson's claim would foreclose a deliberate option left to manufacturers under Standard 208, namely the option of installing manual lap-only seat belts, Carden's and Wilson's seat belt claims are preempted.

Similarly, FMVSS 208 gives manufacturers the option of selecting between either a lap-only or a lap/shoulder belt which may be equipped with either a retractor or a manual adjusting device. Separate analysis of Carden's and Wilson's no-retractor claims is not necessary as these claims would also foreclose an express option given to manufacturers. Accordingly, Carden's and Wilson's retractor claims are also preempted.

## B.

Alternatively, Carden and Wilson contend that even if this court were to find that their seatbelt claims are preempted, the district court's grant of summary judgment should nevertheless be reversed because the unique design of the 1999 Pontiac Grand Am rendered the vehicle unsafe without a lap/shoulder belt installed in the rear center seat. We review a grant of summary judgment de novo, using the same criteria as the district court. Plyant v. Hartford Life and Accident Ins. Co., 497 F.3d 536, 538 (5th Cir. 2007). Summary judgment is proper if the record reflects "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Plyant, 497 F.3d at 538.

We agree with Carden and Wilson that pursuant to Geier a manufacturer's decision to employ a unique vehicle design might foreclose certain options otherwise available to it under the federal standards and that suits brought

7

under this defective design theory are not preempted. See 529 U.S. at 885 ("It is possible that some special design-related circumstance concerning a particular kind of car might require airbags, rather than automatic belts, and that a suit seeking to impose that requirement could escape pre-emption"). The question remains, however, whether Carden and Wilson submit sufficient evidence to meet the summary judgment bar.

Carden and Wilson present evidence in the form of expert testimony to support their claim that design aspects of the 1999 Grand Am were such that installation of a lap-only seat belt in the rear center seat made the car unsafe. Upon close review of the record, the expert testimony fails to identify any significant differences between the 1999 Grand Am and other vehicles designed during the same time period that would justify this claim. Further, Carden and Wilson have produced no other evidence to support their claim that the 1999 Grand Am is in fact unique. This claim appears to be merely an attempt to circumvent the preemption bar and also does not justify a reversal of the district court's grant of summary judgment to GM.

C.

Finally, Carden and Wilson appeal the district court's grant of summary judgment in favor of GM on their defective marketing and failure to warn claims. Carden and Wilson contend that these claims are not preempted by FMVSS 208 because at the time the 1999 Grand Am was manufactured, no federal safety standard regulated the instructions or warnings for the rear center seat in passenger vehicles. The Eleventh Circuit addressed a similar issue, and held that where the defective marketing and failure to warn claims are themselves premised on defective design claims found to be preempted, the defective marketing and failure to warn claims are also preempted federal law. Griffith, 303 F.3d at 1282; Irving v. Mazda Motor Corp., 136 F.3d 764, 770 (11th Cir. 1998)

("Because Plaintiff's defective-design claim is preempted by FMVSS 208, there was no defect about which to warn.").

The section of Carden's and Wilson's brief addressing their defective marketing and failure to warn claims is sparse. However, from what we can gather, it appears that Carden's and Wilson's defective marketing and failure to warn claims are based on GM's decision to install a manual lap-only seat belt. Because Carden's and Wilson's defective marketing and failure to warn claims appear to be tied to their defect claims, these claims are also preempted.

### III. Conclusion

The Supreme Court's decision in Geier governs this case, and as such we hold that Carden's and Wilson's design defect and defective marketing claims are preempted by FMVSS 208. Also, Carden and Wilson have not succeeded in showing that the 1999 Pontiac Grand Am was uniquely designed so as to warrant exemption from preemption analysis. Accordingly, we AFFIRM the rulings of the district court.