Jenean ROLAND and Carl J. Roland, a minor, b/n/f Jenean Roland, Appellants–Defendants,

v.

GENERAL MOTORS CORPORATION, a foreign corporation, Appellee–Plaintiff,

Kristen Shelton and Genasys, L.C., a foreign limited liability corporation, Defendants below.

No. 09A05–0708–CV–425.

Court of Appeals of Indiana.

March 3, 2008.

Fred Schultz, Greene & Schultz, Bloomington, IN, Robert L. Habush, Daniel A. Rottier, Donald H. Slavik, Virginia M. Antoine, Habush Habush & Rottier S.C., Milwaukee, WI, Attorneys for Appellant.

Nicholas C. Pappas, Julia Blackwell Gelinas, Lucy R. Dollens, Locke Reynolds LLP, Indianapolis, IN, A. Erin Dwyer, Timothy A. Daniels, Figari & Davenport, L.L.P., Dallas, TX, Attorneys for Appellee.

## OPINION

HOFFMAN, Senior Judge.

Plaintiffs–Appellants Jenean Roland and Carl J. Roland, a minor, b/n/f Jenean Roland ("the Rolands") appeal the trial court's grant of partial summary judgment pertaining to claims against Defendants–

Appellees General Motors Corporation, a foreign corporation ("General Motors"), Kristen Shelton ("Shelton"), and Genasys, L.C., a foreign limited liability corporation ("Genasys").[1] We affirm.

The Rolands raise four issues for our review, which we consolidate and restate as:

I. Whether the trial court erred in determining that federal law pre-empted state law claims that a passenger car's rear center seat occupant restraint system was defectively and negligently designed because it had a lap-only seatbelt, rather than a lap/shoulder belt, that would have prevented injuries to the occupant of that seat.

II. Whether the trial court erred in determining that federal law pre-empted state law claims that the rear center occupant restraint system was defectively and negligently designed because it was equipped with a manual adjusting devise, rather than a retractor.

III. Whether the trial court erred in determining that federal law pre-empted state law misrepresentation and failure-to-warn claims.

On July 3, 2004, Jenean Roland was driving a 1998 Chevrolet Cavalier convertible when it was struck by a vehicle driven by Shelton and insured by Genasys. At the time of the collision, Jenean's ten-year-old son, C.J., was seated in the center seat of the rear passenger compartment of the Cavalier. The seat was equipped with a lap belt, which C.J. was wearing at the time of the collision. C.J. suffered serious, disabling injuries.

General Motors' manufacture and final assembly of the Cavalier driven by Jenean occurred on or about August 25, 1997.

The vehicle's center rear seating position was equipped with a Type–1 two-point (lap only) safety belt with a manual adjusting device. The vehicle complied with all Federal Motor Vehicle Standards ("FMVSS"), including FMVSS 208, which gave General Motors the choice to install a Type–1 or Type–2 (lap/shoulder) safety belt with either an automatic or manual adjusting device.

The Rolands filed suit asserting that the Cavalier was defectively and negligently designed because the center rear seat was not equipped with a lap/shoulder belt. General Motors responded by filing a motion for partial summary judgment, in which it asserted that any claim predicated on General Motor's choice of the lap belt option in the center rear seat was pre-empted by federal law. In its supporting brief, General Motors alleged that the Rolands' claims were pre-empted by FMVSS 208 (49 C.F.R. § 571.208) which was promulgated by the Department of Transportation ("DOT") and its subdivision, the National Highway Traffic Safety Administration ("NHTSA"), under the authority of the National Traffic and Motor Vehicle Safety Act of 1966 (the "Safety Act"), 15 U.S.C. § 1391 *et seq.*, recodified as amended, 49 U.S.C. § 30101 *et seq.* The trial court granted General Motors' motion, and this appeal followed.

■ Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Indiana Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Pannell v. Penfold,* 848 N.E.2d 1130, 1132 (Ind.Ct.App.2006), *trans. denied.* "We must reverse the grant of a summary judgment motion if the rec-

1. Shelton and Genasys are not parties to this appeal.

ord discloses an incorrect application of the law to those facts." *Id.* (quoting *Lake States Ins. Co. v. Tech Tools, Inc.,* 743 N.E.2d 314, 317 (Ind.Ct.App.2001)). Here, the meaning of a statute and interpretative regulations are at issue, and because the parties agree that the relevant facts are not in dispute, construction of the statute and regulation is a pure question of law for which disposition by summary judgment is appropriate. *See Pike Township Educational Foundation v. Rubenstein,* 831 N.E.2d 1239, 1241 (Ind.Ct.App.2005).

## I.

The Rolands contend that the trial court erred in ruling that federal law pre-empted their state common law tort claim that the Cavalier's center seat occupant restraint system was defectively and negligently designed because it had a lap-only seatbelt, rather than a lap/shoulder belt. Like the trial court, we consider whether the Safety Act and FMVSS 208 pre-empt this claim.

 The pre-emption doctrine is grounded in the Supremacy Clause of Article Six of the United States Constitution, which establishes federal law as the supreme law of the land. *Rogers ex rel. Rogers v. Cosco,* 737 N.E.2d 1158, 1163 (Ind.Ct.App.2000), *trans. denied*[2] (citing U.S. Const. Art. VI, cl. 2). Administrative regulations promulgated pursuant to congressional authorization have the same pre-emptive effect as federal statutes. *Id.* at 1163–64 (citing *York v. Union Carbide Corp.,* 586 N.E.2d 861, 865 (Ind.Ct.App. 1992)).

Congress enacted the Safety Act in response to the "soaring rate of death and debilitation on the Nation's highways."

S.Rep. No. 1301, 89th Cong., 2d Sess. 1 (1966), reprinted in 1966 U.S.Code Cong. & Admin. News 2709. The Safety Act directs the promulgation of motor vehicle safety standards that "shall be practicable, meet the need of motor vehicle safety, and be stated in objective terms...." 15 U.S.C. § 1391 (now, 49 U.S.C. § 30111(a)). FMVSS 208 "specifies performance requirements for the protection of vehicle occupants in crashes." 49 C.F.R. § 571.208.S1 (1990). The regulation is designed to "reduce the number of deaths of vehicle occupants, and the severity of injuries, by specifying vehicle crashworthiness requirements ...., and by specifying equipment requirements for active and passive systems." 99 C.F.R. § 571.208.S2 (1990).

Here, the Rolands acknowledge that at the time the Cavalier was manufactured, General Motors was given the FMVSS 208–provided option of installing the lap-only or lap-shoulder belts and that General Motors chose the former option for the Cavalier. The Rolands contend, however, that the existence of choice under FMVSS 208 does not foreclose their state tort law claim. The crux of the Rolands' argument is that FMVSS 208, like other regulations promulgated pursuant to the Safety Act, constitutes a minimum safety standard that may be augmented by state common law. The Rolands conclude that General Motors is negligent in failing to do more than the minimum required by the regulation.

 General Motors, however, asserts, among other things, that FMVSS 208 (as applicable at the time of the Cavalier's manufacture and assembly) expressed not a minimum safety standard, but a comprehensive regulatory scheme. General Mo-

---

**2.** *Cosco* was disapproved on other grounds by our supreme court. *See Schultz v. Ford Motor* *Co.,* 857 N.E.2d 977 (Ind.2006).

tors further asserts that its choice of installing a lap belt in the Cavalier was authorized by the comprehensive scheme and that the Rolands' tort claims interfere therewith, thus requiring pre-emption.

The Safety Act contains a pre-emption provision that explicitly pre-empts any State *legislative* or *regulatory* enactment that covers "the same aspect of performance" as a Federal standard but is not identical to the Federal standard. 15 U.S.C. § 1392(d) (1998), (now, 49 U.S.C. § 30103(b)(1)). The Act also contains a "savings clause" providing that compliance with a Federal motor vehicle safety standard "does not exempt any person from any liability under common law." 15 U.S.C. § 1397(k) (1988), (now, 49 U.S.C. § 30103(e)).

■ With reference to the savings clause, the United States Supreme Court has held that the language "preserves those actions that seek to establish greater safety than the minimum safety achieved by a federal regulation intended to provide a floor." *Geier v. American Honda Motor Co.*, 529 U.S. 861, 870, 120 S.Ct. 1913, 1919, 146 L.Ed.2d 914 (2000). Indeed, the Court held that the savings clause "reflects a congressional determination that occasional non-uniformity is a small price to pay for a system in which juries not only create, but also enforce, safety standards, while simultaneously providing necessary compensation to victims." *Id.* at 1920, 120 S.Ct. 1913. However, the court further held that the language of the savings clause does not preclude pre-emption where a state's common law "would upset the careful regulatory scheme established by federal law." *Id.* at 1919, 120 S.Ct. 1913. Accordingly, the Court concluded that the savings clause "does not bar the ordinary working of conflict pre-emption principles." *Id.* A conflict occurs when a state law stands as an obstacle to the full implementation of a federal statute by preventing the accomplishment and execution of the full purposes and objectives of Congress or when a state law interferes with the methods by which the federal statute was designed to reach its goal. *International Paper Co. v. Ouellette*, 479 U.S. 481, 494, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987).

In *Geier*, the Court considered whether FMVSS 208 pre-empted a State common law tort action where the plaintiff claimed that the defendant automobile manufacturer, which had chosen not to install airbags in some of its vehicles, as allowed by FMVSS 208, should have equipped the particular vehicle with airbags. 120 S.Ct. at 1916. The Court analyzed the 1984 version of FMVSS 208, and its rulemaking history, to determine whether the rule was intended by the federal government merely to set a minimum standard that could be exceeded by requirements established by state common law or to express a comprehensive regulatory scheme that allowed manufacturers to choose among various passenger options. *Id.* at 1922. The Court approved the D.O.T.'s comments that FMVSS 208 "deliberately provided the manufacturer with a range of choices among different passive restraint devices." *Id.* The Court further approved comments that "[t]hose choices would bring about a about a mix of different devices introduced gradually over time; and FMVSS 208 would thereby lower costs, overcome technical safety problems, encourage technological development, and win widespread consumer acceptance—all of which would promote FMVSS 208's safety objectives." *Id.*

The Court concluded that the common-law tort action "would have presented an obstacle to the variety and mix of devices that the federal regulation sought." *Id.* at 1925. Thus, the Court held that the com-

mon law tort action was pre-empted. *Id.* at 1928.

The Rolands argue that *Geier* is not applicable because its reasoning applies only to cases involving passive restraints (airbags and fully automatic belt systems).[3] This argument was considered and rejected in *Carden v. General Motors Corp.,* 509 F.3d 227 (5th Cir.2007) (installation of a lap belt in rear center seat); *Hurley v. Motor Coach Industries, Inc.,* 222 F.3d 377 (7th Cir.2000), *cert. denied,* 531 U.S. 1148, 121 S.Ct. 1087, 148 L.Ed.2d 962 (2001) (installation of lap belt in a bus); *Griffith v. General Motors Corp.,* 303 F.3d 1276 (11th Cir.2002), *cert. denied,* 538 U.S. 1023, 123 S.Ct. 1953, 155 L.Ed.2d 868 (2003) (installation of a lap belt in the front center seat of a motor vehicle); and *Heinricher v. Volvo Car Corp.,* 61 Mass.App.Ct. 313, 809 N.E.2d 1094 (2004), *review denied* (installation of a lap belt in the rear center seat of a motor vehicle). In holding a state common law claim was pre-empted, the *Hurley* court noted that the choices embedded in FMVSS 208 reflect D.O.T.'s recognition of the public's "strong aversion" to wearing seat belts. 222 F.3d at 382. The court further noted that "[t]he point is that, as in *Geier,* the decision to leave options open to bus manufacturers was made with specific policy objectives in mind. [Plaintiff's] suit, if successful, would undermine that policy objective and therefore is pre-empted." *Id.* In *Griffith,* the court held that in *Geier* and similar cases,

the pre-emptive effect of FMVSS 208 is not "analyzed as a function between passive and manual restraint systems." 303 F.3d at 1280.

To the extent they are grounded in the comprehensive regulatory scheme of FMVSS 208, we agree with the above-cited cases. Indeed, it is clear that NHTSA's regulation of seat belt use was motivated by the same policy concerns that the Supreme Court identified in *Geier* as the basis for the agency's decision to permit various passive restraint options: safety and consumer acceptance (with respect to child restraints), technical difficulties (including issues as to anchor locations and possible interference with the rear view mirror), and lowering costs to encourage technological developments.[4]

The history of FMVSS 208 with reference to seat belts is thoroughly discussed in *Carden,* 509 F.3d at 231–32. In support of our conclusion, we quote a portion of the *Carden* decision:

Carden and Wilson attempt to distinguish their claims from those in *Geier,* arguing that their claims are consistent with the policy objectives identified by the NHTSA because the agency never enunciated any specific regulatory policy for allowing manufacturers to install either lap belts or lap/shoulder belts. We disagree. A review of the regulatory and rule making history of FMVSS

3. "Passive restraints" are those that "require no action by vehicle occupants." 49 C.F.R. § 571.208 S4.1.1.1. Airbags are passive restraints, as are automatic seat belts, which move into position without any action by the vehicle's occupants. 49 C.F.R. § 571.208 S4.5.3. "Active restraints" require the vehicle occupants to do something, such as latch a manual seat belt.

4. *See e.g.* 49 Fed.Reg. 15241 (April 18, 1984) (requiring Type 2 belts is not the best approach for providing maximum safety protec-

tion for children); 52 Fed.Reg. 22818, 22819 (June 16, 1987) (requiring that significant resources be expended to install Type 2 belts in all rear seat locations could result in lost opportunity to improve vehicle safety through other means); 53 Fed.Reg. 47982, 47984 (November 29, 1988) (more technical difficulties associated with requirement for Type 2 belt in center rear seating position, including, anchor locations for Type 2 belts possibly impeding driver's rearward vision).

208 supports the conclusion that the NHTSA's decision to allow car manufacturers the option to install either lap-only or lap/shoulder seat belts in the rear center seating position of passenger vehicles was deliberate, and the agency identified specific policy reasons for its decision. In 1967, when FMVSS 208 was initially promulgated, the DOT required either lap-only or lap/shoulder seat belts in each seating position in passenger vehicles. 32 Fed.Reg. 2408, 2415 (Feb. 3, 1967). As technology advanced and seatbelt use became more widespread, seatbelt requirements evolved. In 1989, noting the decreased cost and increased use of seatbelts in rear seating positions, the NHTSA amended FMVSS 208 to require the use of lap/shoulder seat belts in rear outboard seating. 54 Fed.Reg. 46257–01 (Nov. 2, 1989). The commentary preceding the final rules indicates that the NHTSA considered comments suggesting that lap/shoulder seat belts be required in the rear center seating position as well, but decided to leave manufacturers the option to select between lap-only and lap/shoulder belts. *Id.* at 46258. In excluding the rear center seat from this requirement, the agency explained that "there [were] more technical difficulties associated with any requirement for lap/shoulder belts at center rear seating positions, and that lap/shoulder belts at center rear seating positions would yield small safety benefits and substantially greater costs, given the lower center seat occupancy rate and the more difficult engineering

task." *Id.* Based on this language, it is clear that the agency's decision was deliberate and based on managing technological constraints and cost efficiency. (Footnotes deleted).[5] As we do above, the *Carden* court emphasized that FMVSS 208's extensive rule making history "indicates that child safety concerns also played a part in the decision not to require lap/shoulder belts in rear seating positions. Specifically, the NHTSA struggled to find balance between seat belt options in rear seating positions that could accommodate adult passengers and also properly restrain child safety seats." *Id.* at 231, n. 2.

The Rolands cite *Sprietsma v. Mercury Marine,* 537 U.S. 51, 123 S.Ct. 518, 154 L.Ed.2d 466 (2002) and argue that it is controlling. In *Sprietsma,* the Petitioner's wife was killed in a boating accident when she was struck by an outboard motor's propeller. Sprietsma filed a state common law tort action claiming that the motor was unreasonably dangerous because, among other things, it was not protected by a propeller guard. The Supreme Court considered whether the U.S. Coast Guard's decision not to adopt a regulation requiring propeller guards on boats pre-empted Sprietsma's claim. The Court held that the claim was not pre-empted, determining that although the Coast Guard intentionally declined to require propeller guards, it did not convey an authoritative message of a federal policy against them. 123 S.Ct. at 518.

The Rolands argue that the NHTSA's decision to allow manufacturers the option to install either lap only or lap/shoulder

---

**5.** In 2002, "Anton's Law" was passed and it directed NHTSA to complete rulemaking within two years that would require the installation of lap/shoulder belts in all rear seating positions. Pub.L. No. 107–318, § 5. The NHTSA promulgated a new version of FMVSS 208 requiring that lap/shoulder belts

be phased into all passenger vehicles over a three-year period beginning in September 2005. 69 Fed.Reg. 70904–01 (Dec. 8, 2004). This legislation has no bearing on the case before us as we consider the version of FMVSS 208 in effect at the time the Cavalier was manufactured.

belts is essentially the same as the Coast Guard's decision in *Sprietsma*. We disagree. *Sprietsma* involved a complete absence of regulatory action with regard to propeller guards. The present case, however, involves a choice made available as part of the comprehensive regulatory action expressed in FMVSS 208. *See Carden*, 509 F.3d at 232 (holding that "the NHTSA identified particular policy reasons for its decision to allow manufacturers the option of selecting between the two seat belt designs, and included this option as part of a comprehensive regulatory scheme"). *Sprietsma* is not controlling here.

In support of their view that FMVSS 208 is a minimum safety standard that may be augmented by state common law, the Rolands cite a 1980 letter sent to General Motors and other automobile manufacturers by Joan Claybrook, then administrator of NHTSA, in which she encouraged manufacturers to install lap/shoulder belts and air bags and described federal safety standards as "minimum standards." Appellants' App. at 311, 585. We conclude that a letter from a single NHTSA administrator, written nine years before the version of FMVSS 208 at issue here, is not indicative of NHTSA's regulatory scheme as that scheme is set forth in *Geier* and various regulations.

We hold that the Rolands' common law tort action is pre-empted on the narrow grounds that it conflicts with the deliberate and comprehensive regulatory scheme set forth in FMVSS 208. We do not join the above-cited courts in finding pre-emption based upon the broader grounds that any regulation which affords a choice to a manufacturer pre-empts the state action. *See generally Rogers*, 737 N.E.2d 1158

(holding that state law product liability action was not pre-empted when manufacturer exercised a choice under FMVSS 213).

## II.

The Rolands' contend that the trial court erred in determining that federal law preempted their claim that the rear center occupant restraint system was defectively and negligently designed because it was equipped with a manual adjusting device, rather than a retractor. We need not conduct a separate analysis of this issue as the choice given was part of the comprehensive regulatory design of FMVSS 208. Among other things, the choice allowed alternatives because of "lockability" issues, a problem that persisted because lap belts were more compatible with child restraints.

## III.

The Rolands contend that the trial court erred in determining that federal law preempted their misrepresentation and failure-to-warn claims. The former claim turns on the Rolands' belief that General Motors "falsely represented in the owner's manual ... that an occupant of the car could use the rear center lap-only belt without a child car seat." Appellants' Brief at 3 (citing Appellants' App. at 51). The latter claim is the based upon the Rolands' belief that General Motors should have warned that the lap belt was only properly used with a conventional child car seat.

The Rolands' misrepresentation and failure to warn claims depend on their contention that a lap belt is defective and are a roundabout attempt to challenge the choice provided by FMVSS 208 as part of a comprehensive regulatory scheme. *See Car-*

*rasquilla v. Mazda Motor Corp.,* 166 F.Supp.2d 169, 178 (M.D.Pa.2001) (holding that claims were "nothing more than a backdoor attempt to attack once again [the manufacturer's] exercise of one of the restraint options under FMVSS 208 . . . it [therefore] frustrates the purpose and objective of the federal regulation and invokes implied pre-emption under the holding in *Geier* ").

Affirmed.

FRIEDLANDER, J., and BRADFORD, J., concur.