KENDRA M. HEINRICHER & others[1] *vs.* VOLVO CAR CORPORATION & others.[2]

No. 02-P-1564.

Norfolk. February 3, 2004. - June 10, 2004.

Present: GREENBERG, GRASSO, & KAFKER, JJ.

*Federal Preemption. Motor Vehicle,* Seat belt. *Negligence,* Motor vehicle, Design, Manufacturer of motor vehicle.

This court concluded that the National Traffic and Motor Vehicle Safety Act of 1966, 15 U.S.C. §§ 1381-1431, and Federal Motor Vehicle Safety Standard 208, 49 C.F.R. § 571.208 (1990), impliedly preempted the plaintiffs' State common-law claims for damages sustained as a result of an alleged automotive design defect. [314-319]

CIVIL ACTION commenced in the Superior Court Department on October 13, 2000.

The case was heard by *Jeffrey A. Locke,* J., on a motion for summary judgment.

*Leslie A. Brueckner,* of the District of Columbia (*Deborah M. Santello* with her) for the plaintiffs.

*John C. La Liberte* (*Anthony L. DeProspo, Jr.,* with him) for the defendants.

GRASSO, J. While riding in the rear center seat of a 1990 Volvo sedan (the Volvo) and wearing a two-point lap belt, Kendra M. Heinricher sustained serious injuries in a single-vehicle accident. All of the other seats in the Volvo were equipped with three-point lap-shoulder harnesses. Kendra and her parents, Darlene and Richard Heinricher, brought a complaint against Volvo Car Corporation, Volvo North America Corporation, and Dalzell Bros., Inc., sounding in negligence and breach of warranty, and asserting that the Volvo was defective because it lacked a three-

[1]Darlene Heinricher and Richard Heinricher.

[2]Volvo North America Corporation and Dalzell Bros., Inc.

point lap-shoulder harness in the rear center seat.[3] A judge in the Superior Court granted the defendants' motion for summary judgment because he concluded that the Heinrichers' claims were preempted by Federal statute and safety regulations promulgated thereunder that permit automobile manufacturers to equip the rear center seats of their vehicles with *either* two-point lap belts *or* three-point lap-shoulder harnesses.

On appeal, we consider whether the National Traffic and Motor Vehicle Safety Act of 1966 (the Safety Act), see 15 U.S.C. §§ 1381-1431 (1988),[4] and Federal Motor Vehicle Safety Standard 208 (Standard 208), 49 C.F.R. § 571.208 (1990), impliedly preempt State common-law claims for damages sustained as a result of an alleged automotive design defect. Because we conclude that the Heinrichers' State common-law claims are preempted by Federal law, we affirm.

Congress enacted the Safety Act in response to the "soaring rate of death and debilitation on the Nation's highways."[5] S. Rep. No. 1301, 89th Cong., 2d Sess. 1 (1966), reprinted in 1966 U.S. Code Cong. & Admin. News 2709. The legislative goal was to reduce injuries and deaths resulting from traffic accidents by authorizing the promulgation of Federal motor vehicle safety standards — mandatory standards that would apply to all new motor vehicles, would be practicable, would meet the need for motor vehicle safety, and would be stated in objective terms. See 15 U.S.C. §§ 1381, 1392(a) (1988). See also *Wood* v. *General Motors Corp.*, 865 F.2d 395, 397 (1st Cir. 1988), cert. denied, 494 U.S. 1065 (1990).

Standard 208 "specifies performance requirements for the protection of vehicle occupants in crashes." 49 C.F.R. § 571.208.S1 (1990). Its purpose is "to reduce the number of deaths of vehicle

---

[3]Darlene and Richard Heinricher also asserted claims for loss of consortium against the defendants.

[4]On July 5, 1994, Congress recodified the National Traffic and Motor Vehicle Safety Act of 1966 without substantive change. See Pub. L. No. 103-272, § 1(a), (d), 108 Stat. 745, 940 (1994). The recodified provisions are set forth in 49 U.S.C. §§ 30101-30169 (2000).

[5]"When framing the Safety Act, Congress indicated clearly its intention that the primary responsibility for setting standards regulating the national automobile manufacturing industry rested upon the federal government, not the states." *Wood* v. *General Motors Corp.*, 865 F.2d 395, 397 (1st Cir. 1988), cert. denied, 494 U.S. 1065 (1990).

occupants, and the severity of injuries, by specifying vehicle crashworthiness requirements . . . , and by specifying equipment requirements for active and passive restraint systems." 99 C.F.R. § 571.208.S2 (1990). At the time the Volvo was manufactured, Standard 208 permitted manufacturers to install *either* a two-point lap belt (a "Type 1" system) *or* a three-point lap-shoulder harness (a "Type 2" system) in the rear center seat of their vehicles. 99 C.F.R. §§ 571.208.S4.1.4 (1990).

The parties do not dispute that the regulatory scheme set out in Standard 208 provides vehicle manufacturers with passenger restraint options or that Volvo Car Corporation selected the two-point lap belt option, instead of the three-point lap-shoulder harness option, for installation in the Volvo in which Kendra was injured. The Heinrichers contend, however, that the existence of a regulatory "choice" does not automatically foreclose their State common-law claims where, as here, there is no hard evidence of a clear conflict with some Federal purpose. The Heinrichers assert that they merely seek to hold the defendants liable for failing to do more than the minimum required by Standard 208. In other words, they argue that the Volvo was defective because Volvo Car Corporation chose to equip the vehicle's rear center seat with a two-point lap belt rather than with a three-point lap-shoulder harness. Conversely, the defendants contend that Standard 208, which allowed manufacturers to install only a two-point lap belt in the rear center seat, preempts the Heinrichers' claims because imposing State common-law liability on the defendants for failing to utilize one of the two permissible choices conflicts with Federal law by standing as an obstacle to the regulatory scheme of the Safety Act.

The parties' respective contentions find support in different provisions of the Safety Act. The Act contains a preemption provision that explicitly preempts any State *legislative* or *regulatory* enactment that covers "the same aspect of performance" as a Federal standard but is not identical to the Federal standard. 15 U.S.C. § 1392(d) (1998). See *Wood* v. *General Motors Corp.*, *supra* at 398. However, the Act's express preemption provision does not operate as a bar to *common-law* actions. A "savings" clause of the Safety Act provides that compliance with a Federal

motor vehicle safety standard "does not exempt any person from any liability under common law." 15 U.S.C. § 1397(k) (1988). Such language "preserves those actions that seek to establish greater safety than the minimum safety achieved by a federal regulation intended to provide a floor." *Geier* v. *American Honda Motor Co.*, 529 U.S. 861, 870 (2000). At the same time, the language of the savings clause does not suggest a congressional intent to save State common-law actions that conflict with Federal regulations such as Standard 208. See *id.* at 869 (savings clause does not bar ordinary working of conflict preemption principles). See also *Gracia* v. *Volvo Europa Truck, N.V.*, 112 F.3d 291, 298 (7th Cir. 1997), cert. denied, 522 U.S. 1050 (1998).

It is well established that Federal law preempts State law when an actual conflict exists between them. See *Attorney Gen.* v. *Brown*, 400 Mass. 826, 829 (1987). See also *Fidelity Fed. Sav. & Loan Assn.* v. *de la Cuesta*, 458 U.S. 141, 153 (1982); *Geier* v. *American Honda Motor Co.*, supra at 869. As pertinent here, "[a] conflict may be found where compliance with both State and Federal regulations is physically impossible, see *Florida Lime & Avocado Growers, Inc.* v. *Paul*, 373 U.S. 132, 142-143 (1963), or where the State statute 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' *Hines* v. *Davidowitz*, 312 U.S. 52, 67 (1941)." *Attorney Gen.* v. *Brown*, supra at 829. The Supreme Judicial Court has assumed, without deciding, that "a tort action has the same regulatory effect as a State law and therefore that it can be preempted in the same manner and to the same degree as a State law." *Sawash* v. *Suburban Welders Supply Co.*, 407 Mass. 311, 315 (1990). See *Wood* v. *General Motors Corp.*, 865 F.2d at 410.

Central to resolution of the instant preemption issue is *Geier* v. *American Honda Motor Co.*, supra, on which both parties rely. There, the United States Supreme Court considered whether Standard 208 preempted a State common-law tort action in which the petitioner claimed that the defendant automobile manufacturer, which had chosen not to install airbags in some of its vehicles, as allowed by Standard 208, should nonetheless have equipped the particular vehicle with airbags. See *id.* at

864-865. After thoroughly examining the rule-making history of Standard 208, the Supreme Court concluded that in promulgating Standard 208 the United States Department of Transportation (DOT) had not merely set forth minimum safety standards beyond which a State could require more, but rather had expressed a comprehensive regulatory scheme that allowed manufacturers to choose among various passenger restraint options. See *id.* at 874-875. The petitioner's lawsuit would have established a rule of State tort law that effectively *required* manufacturers to install an airbag in every vehicle. See *id.* at 881. Because such a rule would have conflicted with DOT's judgment that "safety would best be promoted if manufacturers installed *alternative* protection systems in their fleets rather than one particular system in every car," *ibid.* (citation omitted), the Supreme Court concluded that the petitioner's State tort claims were preempted.

In a case nearly identical to the present one, the United States Court of Appeals for the Eleventh Circuit in *Griffith* v. *General Motors Corp.*, 303 F.3d 1276 (11th Cir. 2002), cert. denied, 538 U.S. 1023 (2003), applied the principles of *Geier* to conclude that Standard 208 impliedly preempted a State common-law action asserting that the seat belt system of the plaintiff's Chevrolet Silverado truck was defective because General Motors had chosen to install a lap belt only restraint in the front center seat. As here, the plaintiff in *Griffith* argued that there was no deliberate regulatory goal underlying the statutory option between a lap belt only restraint system and a combination lap and shoulder belt system, which her lawsuit would require as a rule of State law. See *id.* at 1280. Therefore, she continued, her claim was not preempted because it did not stand as an "obstacle" to the achievement of the passive restraint objectives underlying Standard 208. See *ibid.* The *Griffith* court disagreed and reasoned that because Standard 208 embodies a comprehensive regulatory scheme giving manufacturers a choice of safety device options, a State tort action that foreclosed one or more of those specifically permitted options was preempted. See *id.* at 1282. *Griffith* specifically rejected the plaintiff's argument that the preemption analysis set forth in *Geier* v. *American Honda Motor Co.*, *supra*, and its progeny only applied to cases

involving passive restraints (airbags and fully automatic belt systems), and concluded instead that the preemptive effect of Standard 208 did not differentiate between passive and manual restraint systems. See *Griffith* v. *General Motors Corp.*, *supra* at 1280.

Other courts that have considered this preemption issue have reached a similar conclusion. See *Wood* v. *General Motors Corp.*, 865 F.2d at 402 (State law claim that motor vehicle was defective where equipped with seat belts, but not with airbags, impliedly preempted by Safety Act and Standard 208); *Hurley* v. *Motor Coach Indus., Inc.*, 222 F.3d 377, 381-383 (7th Cir. 2000), cert. denied, 531 U.S. 1148 (2001) (State law claim that bus was defectively designed by only providing driver with two-point lap belt preempted by Standard 208 because it foreclosed one or more safety design options); *Carrasquilla* v. *Mazda Motor Corp.*, 166 F. Supp. 2d 169, 177 (M.D. Pa. 2001) (State law claim that shoulder-only automatic seat belt system was defective in design preempted by Standard 208); *Anthony* v. *Abbott*, 289 F. Supp. 2d 667, 669 (D.V.I. 2003) (State law claim based on failure to install side airbag preempted by Standard 208); *Hernandez-Gomez* v. *Volkswagen of Am., Inc.*, 201 Ariz. 141, 146 (Ct. App. 2001), cert. denied, 537 U.S. 1046 (2002) (State law claim for injuries based on vehicle's lack of manual lap belt to accompany passive restraint system implicitly preempted by Federal law). Contrast *Sprietsma* v. *Mercury Marine*, 537 U.S. 51, 67-68 (2002) (State tort claims not preempted by Federal Boat Safety Act of 1971 where Act did not require Coast Guard to implement comprehensive safety regulations for recreational boats or impose propeller guard requirement on motorboat engines).

In the context of the present case, we agree with the cogent analysis of *Griffith* v. *General Motors Corp.*, *supra*, and analogous cases that have recognized the preemptive effect of Standard 208 on State common-law claims. We also agree that under the rationale of *Geier* the preemptive effect of Standard 208 is not a function of a distinction between passive and manual restraint systems, but encompasses the two alternative manual restraint systems at issue here. As part of a comprehensive safety scheme, Federal law plainly provided Volvo Car

Corporation with the option of installing *either* a two-point lap belt *or* a three-point lap-shoulder harness in the rear center seat of its vehicles. Volvo Car Corporation complied with this safety scheme by availing itself of one of the two designated options. The Heinrichers' action would hold the defendants liable for choosing one Federally-approved passenger restraint system over another. Their cause of action, if successful, would establish a rule that, to avoid liability in Massachusetts, manufacturers *must* install three-point lap-shoulder harnesses in the rear center seats of all of their vehicles. As such, the passenger restraint options specifically afforded manufacturers by Congress would be foreclosed.[6] This result would conflict with and stand as an obstacle to the implementation of the comprehensive safety scheme promulgated in Standard 208. Accordingly, the Heinrichers' State common-law claims are preempted as matter of law.

*Judgment affirmed.*

---

[6]One of the reasons that the DOT decided to implement a rear seat lap-shoulder harness *option*, rather than a *requirement*, was its desire not to hinder the development of other safety advancements. See 52 Fed. Reg. 22,819 (1987) ("Requiring significant industry and agency resources to be spent for relatively little safety gain can result in a lost opportunity to better improve vehicle safety through other means, such as improved frontal or side impact protection").