[No. G038845. Fourth Dist., Div. Three. Oct. 22, 2008.]

DELBERT WILLIAMSON et al., Plaintiffs and Appellants, v.
MAZDA MOTOR OF AMERICA, INC., et al., Defendants and
Respondents.

906

## COUNSEL

Niddrie, Fish & Buchanan, Martin N. Buchanan; Law Offices of David J. Bennion, David J. Bennion; Girardi & Keese, David R. Lira, Shahram A. Shayesteh and Howard B. Miller for Plaintiffs and Appellants.

Bowman and Brooke, Brian Takahashi, Robert S. Robinson and David R. Kelly for Defendants and Respondents.

Mayer Brown, Donald M. Falk, Erika Z. Jones and Adam C. Sloane for Alliance of Automobile Manufacturers, Inc., as Amicus Curiae on behalf of Defendants and Respondents.

Hugh F. Young, Jr.; Snell & Wilmer, Richard A. Derevan, Gary A. Wolensky and Todd E. Lundell for Product Liability Advisory Council, Inc., as Amicus Curiae on behalf of Defendants and Respondents.

## OPINION

**RYLAARSDAM, J.**—This appeal concerns Federal Motor Vehicle Safety Standard No. 208 (49 C.F.R. § 571.208 (2008); FMVSS 208), a regulation promulgated under the National Traffic and Motor Vehicle Safety Act of 1966 (49 U.S.C. § 30101 et seq.; Safety Act), which authorizes automobile manufacturers to install a lap-only seatbelt at the inboard seating positions of a vehicle. The issue is whether the regulation preempts a common law tort action against a manufacturer for not choosing the option to install a lap/shoulder seatbelt at such a position. We conclude that under the United States Supreme Court's decision in *Geier v. American Honda Motor Co.* (2000) 529 U.S. 861 [146 L.Ed.2d 914, 120 S.Ct. 1913] and its progeny this claim is preempted because it conflicts with FMVSS 208.

In addition, while plaintiffs alleged other grounds for recovery not barred by federal preemption, in light of their concessions the failure to use a lap/shoulder seatbelt was "integral" to the case, we affirm the judgment dismissing the action.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Delbert Williamson, Alexa Williamson, through Delbert as her guardian ad litem, and the Estate of Thanh Williamson sued defendants Mazda Motor of America, Inc., and Mazda Motor Corporation for strict products liability, negligence, deceit, and wrongful death arising from injuries suffered in a front-end motor vehicle collision between their 1993 Mazda MPV Minivan and another vehicle.

According to the second amended complaint, Delbert and Alexa Williamson wore "three-point [lap/shoulder] seatbelts" at the time while Thanh Williamson, "sitting in the middle seat of the [vehicle's] middle row," wore "only . . . a two-point seatbelt or lap[]belt." The complaint alleged all three occupants suffered injuries in the crash, but Thanh's injuries were fatal because "the forces generated by th[e] collision caused her body to 'jack-knife' around her defective lap[]belt, causing severe abdominal injuries and internal bleeding." Plaintiffs claimed defendants were liable because they designed, manufactured, marketed, and sold a minivan that, among other things, "was equipped with inferior . . . two-point lap[]belts in the middle seating positions, when it should reasonably have been equipped with three-point seat[]belts[] as [were] the [vehicle's] remaining seats," and that defendants knew "of the dangers of two-point lap[]belts," but "failed to warn . . . consumers," including plaintiffs, "of such dangers."

Defendants answered the amended complaint and then moved for judgment on the pleadings. They argued federal preemption barred plaintiffs' allegation Thanh Williamson's death "was directly attributable to the center seat being equipped with a lap safety belt" rather than "a lap and shoulder belt" because it "directly conflict[ed] with the choice that federal law gave to manufacturers . . . ." The trial court granted the motion with leave to amend. It agreed federal law precluded a state tort action "to the extent [the] theory of liability [was] the lap[-]only seat belt," but recognized plaintiffs had sufficiently pleaded other "theories of liability as to . . . the decedent's death . . . ."

The third amended complaint substantially repeated the foregoing allegations. It described the minivan as defective, in part, because defendants "equipped [it] with an inferior and unsafe lap-only belt" for "[t]he center seating position of the middle bench seat" that "did not restrain the upper torso of decedent . . . ." It also alleged defendants breached their duty of care

by "fail[ing] to adequately warn . . . about the hazards, risks, and dangers of such defects." (Capitalization omitted.) In addition, it pleaded "[t]he defects and failures alleged . . . were joint and concurrent causes of [p]laintiff[s'] injuries, such that each defect and failure cannot be evaluated and adjudicated separately but must be evaluated and adjudicated together. . . . But for the presence of all of these defects, Thanh Williamson's injuries would not have been as severe nor would she have died . . . ."

Defendants filed a demurrer and a motion to strike, reasserting the federal preemption argument. They noted this pleading conflicted with the trial court's prior ruling and also argued plaintiffs had effectively admitted "*all* of their claims—relating to Thanh Williamson—are based on" the allegation her "death ar[ose] from the lap-only belt," and thus the pleading's other theories of liability, including the failure to warn allegation, were preempted as well.

When the hearing began, the court announced it had tentatively decided to overrule the demurrer. The judge acknowledged "I have ruled . . . you can't have liability just based on [defendant's decision to install] a lap[]belt" and, "to the extent you . . . can find that language in [the third amended complaint] . . . I don't think [plaintiffs are] going to be able to proceed on that." But the federal preemption claim notwithstanding, the trial judge noted, "that doesn't mean that you couldn't state a cause of action" for "negligen[ce] in how you hooked it up or negligen[ce] in how you design the seat that was going to accommodate it, or any other tort theory."

However, at the request of plaintiffs' counsel, the court sustained the demurrer without leave to amend "as to all of plaintiffs' claims arising out of the death of Thanh Williamson . . . ." Counsel explained that, after "the last hearing . . . I thought long and hard after reading all the briefs . . . , considering the court's order and being the person that would try this case on behalf of plaintiffs," about "[w]hat evidence can I put on and what evidence will be barred based on the ruling . . . ." He answered this question, declaring "with the court's ruling as it presently stands, I don't think I could put on a case on behalf of my clients. I really don't. [¶] . . . [¶] If you strike all these [wrong seatbelt option] allegations, I am left with nothing. . . . [¶] . . . [¶] . . . [T]he court's ruling [is] we can't talk about the [seat]belt. But the [seat]belt is integral because had [Thanh Williamson] had the three-point belt like the two other occupants, she would be here today. They survived. [¶] . . . [¶] . . . I don't want to charge my clients the cost of . . . experts . . . and spend . . . money for a claim that is not going to have any legs if we cannot refer to the three-point versus two-point belt. We won't be able to do it. [¶] I will be trying a case" and "you . . . might as well give a non-suit."

Subsequently, the parties stipulated to a dismissal of plaintiffs' remaining claims for personal injuries to Dexter and Alexa Williamson with prejudice. Based thereon, the trial court entered judgment for defendants.

## DISCUSSION

### 1. *Federal Preemption*

■ "The supremacy clause of article VI of the United States Constitution grants Congress the power to preempt state law. State law that conflicts with a federal statute is ' "without effect." ' [Citations.]" (*Dowhal v. SmithKline Beecham Consumer Healthcare* (2004) 32 Cal.4th 910, 923 [12 Cal.Rptr.3d 262, 88 P.3d 1].) "Federal regulations have no less pre-emptive effect than federal statutes." (*Fidelity Federal Sav. & Loan Assn. v. de la Cuesta* (1982) 458 U.S. 141, 153 [73 L.Ed.2d 664, 102 S.Ct. 3014].) Since " '[state] regulation can be as effectively exerted through an award of damages as through some form of preventive relief' " (*Cipollone v. Liggett Group, Inc.* (1992) 505 U.S. 504, 521 [120 L.Ed.2d 407, 112 S.Ct. 2608]), the principles of law governing federal preemption "apply with equal force whether the state law takes the form of a legislative enactment or an award of damages through private suit. [Citations.]" (*Carrillo v. ACF Industries, Inc.* (1999) 20 Cal.4th 1158, 1162 [86 Cal.Rptr.2d 832, 980 P.2d 386].)

■ Federal preemption can arise in the following circumstances. " 'First, Congress can define explicitly the extent to which its enactments pre-empt state law. . . . Second, in the absence of explicit statutory language, state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively. . . . Finally, state law is pre-empted to the extent that it actually conflicts with federal law,' " either because " 'it is impossible for a private party to comply with both state and federal requirements, [citation] or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." ' [Citations.]" (*Dowhal v. SmithKline Beecham Consumer Healthcare, supra,* 32 Cal.4th at p. 923.) It is the latter form of federal conflict preemption that is at issue in this case.

Although defendants and amici curiae on their behalf question its applicability to a case of conflict preemption, generally " '[c]onsideration of issues arising under the Supremacy Clause "start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress." ' [Citation.]" (*Dowhal v. SmithKline Beecham Consumer Healthcare, supra,* 32 Cal.4th at p. 923; see also *Bronco Wine Co. v. Jolly* (2004) 33 Cal.4th 943, 958, fn. 12 [17 Cal.Rptr.3d 180, 95 P.3d 422] [in implied preemption cases "[w]e discern

no persuasive reason why the traditional presumption against preemption should be categorically inapplicable"].) On appeal from the dismissal of an action after the sustaining of a demurrer without leave to amend on the basis of federal preemption we apply a de novo standard of review. (*Credit Managers Assn. of California v. Countrywide Home Loans, Inc.* (2006) 144 Cal.App.4th 590, 593 [50 Cal.Rptr.3d 259].)

2. *The Safety Act*

Congress enacted the Safety Act in 1966 "to reduce traffic accidents and deaths and injuries resulting from traffic accidents," in part, by "prescrib[ing] motor vehicle safety standards for motor vehicles and motor vehicle equipment . . . ." (49 U.S.C. § 30101(1); former 15 U.S.C. § 1381.) To accomplish this purpose, Congress directed the United States Department of Transportation (DOT) to "prescribe motor vehicle safety standards" (49 U.S.C. § 30111(a)) taking into consideration "relevant available motor vehicle safety information," "whether a proposed standard is reasonable, practicable, and appropriate for the . . . type of motor vehicle or motor vehicle equipment for which it is prescribed[,] and [¶] . . . the extent to which the standard will carry out [the declared purposes] of this [Act]." (49 U.S.C. § 30111(b)(1), (3), (4); see also *Motor Vehicle Mfrs. Assn. v. State Farm Mut.* (1983) 463 U.S. 29, 33–34 [77 L.Ed.2d 443, 103 S.Ct. 2856].) DOT subsequently delegated the authority to promulgate these rules to the National Highway Traffic Safety Administration (NHTSA). (49 C.F.R. § 1.50(a) (2008); *Motor Vehicle Mfrs. Assn. v. State Farm Mut., supra*, 463 U.S. at p. 34, fn. 3.)

One of the standards promulgated under the Safety Act is FMVSS 208. It "specifies performance requirements for the protection of vehicle occupants in crashes." (49 C.F.R. § 571.208, S1 (2008).)

Originally FMVSS 208 declared that, other than the driver's side and outboard front passenger seats, a manufacturer could install either "a Type 1 [lap-only] or Type 2 [lap/shoulder] seat belt assembly . . . in each passenger car seat position." (32 Fed.Reg. 2415 (Feb. 3, 1967).) In the early 1980's, NHTSA received a petition to extend the lap/shoulder seatbelt requirement to rear seating positions. (53 Fed.Reg. 47982–47983 (Nov. 29, 1988).) NHTSA declined the request, citing compatibility issues between lap/shoulder belts and then popular child restraint systems, plus a finding "the benefits, if any, to be gained . . . with Type 2 belts for adults would not justify the additional cost of requiring the installation of Type 2 belts in these positions." (49 Fed.Reg. 15241 (Apr. 18, 1984).)

After receiving a second petition, NHTSA reconsidered the issue and in 1988 announced a rule change extending the lap/shoulder seatbelt requirement to rear outboard seating positions of most vehicles, including multipurpose passenger vehicles. (53 Fed.Reg. 47983, 47985–47986, 47992–47993 (Nov. 29, 1988).) NHTSA supported this rule change by citing the "estimate of the costs involved with such a requirement ha[d] changed substantially . . . because of the significant increase in the number of vehicles . . . voluntarily equipped with rear seat lap/shoulder belts," a nationwide increase in seatbelt usage that rendered "the benefits of rear seat lap/shoulder belts . . . reasonably related to the costs" of their installation, and a finding that "lap/shoulder belts in the rear seat would provide better protection for children restrained in booster seats." (53 Fed.Reg. 47983–47984 (Nov. 29, 1988).)

At the same time NHTSA considered, but rejected, a proposal to require lap/shoulder belts at rear inboard seating positions. Citing the potential need for manufacturers to make structural changes to some vehicles, the increased costs of installing lap/shoulder seatbelts, and the limited use of that seating position, NHTSA concluded the "small safety benefits" resulting from extending the lap/shoulder seatbelt requirement to rear center seating positions did not outweigh the resulting "technical difficulties" and "substantially greater costs." (53 Fed.Reg. 47984 (Nov. 29, 1988).) Thus, when defendants manufactured plaintiffs' 1993 MPV Minivan, FMVSS 208 declared all "multipurpose passenger vehicles . . . shall meet the requirements of S4.1.2.1," which authorized either "a Type 1 [lap-only] or Type 2 [lap/shoulder] seat belt assembly," except in "forward-facing rear outboard designated seating position[s]," which "shall be equipped with an integral Type 2 seat belt . . . ." (49 C.F.R. former § 571.208, S4.1.2.1(b), S4.2.2, S4.2.3, S4.2.4 (1992); 53 Fed.Reg. 47992–47993.)

### 3. *FMVSS 208's Application to This Case*

The question presented here is whether FMVSS 208 preempts the present lawsuit because a common law action seeking to hold defendants liable for installing a lap-only seatbelt at a rear inboard passenger seat conflicts with the safety standard.

The Safety Act contains a preemption clause, declaring, "When a motor vehicle safety standard is in effect under this chapter, a State or a political subdivision of a State may prescribe or continue in effect a standard applicable to the same aspect of performance of a motor vehicle or motor vehicle equipment only if the standard is identical to the standard prescribed under this chapter." (49 U.S.C. § 30103(b)(1).) But this statute also contains a savings clause that states "[c]ompliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law." (49 U.S.C. § 30103(e).)

In *Ketchum v. Hyundai Motor Co.* (1996) 49 Cal.App.4th 1672 [57 Cal.Rptr.2d 595], a front-seat passenger was injured in a crash while wearing a two-point automatic shoulder belt without a lapbelt. The defendant argued the lawsuit was preempted because the then applicable version of FMVSS 208 authorized this type of passenger crash protection. Describing FMVSS 208 as a "minimum standard[] for motor vehicle safety" (*Ketchum v. Hyundai Motor Co., supra*, 49 Cal.App.4th at p. 1679), and citing the Safety Act's savings clause, the Court of Appeal rejected the preemption claim. "In the preemption clause, Congress precludes the states from establishing or continuing any motor vehicle 'safety standard applicable to the same aspect of performance.' [Citation.] . . . The savings clause [citation] provides that compliance with a 'safety standard' issued under the Safety Act does not exempt a person from 'liability under common law.' Congress clearly distinguished between motor vehicle safety standards, which are preempted, and common law standards for liability, which are not. This language unambiguously expresses the intent of Congress to preserve common law liability actions." (*Id.* at p. 1680.)

But in *Geier v. American Honda Motor Co., supra*, 529 U.S. 861, the Supreme Court rejected this approach. There the plaintiff suffered injury in a front-end collision. Although the vehicle was equipped with both shoulder and lap seatbelts, she sued the defendants alleging the car was defective because it lacked an airbag. The defendants argued the then applicable version of FMVSS 208, which made installation of an airbag optional, preempted the lawsuit.

Initially, *Geier* rejected the defendants' express preemption claim by reconciling the preemption and savings clause provisions: "[A] reading of the express pre-emption provision that excludes common-law tort actions gives actual meaning to the saving clause's literal language, while leaving adequate room for state tort law to operate—for example, where federal law creates only a floor, *i.e.*, a minimum safety standard. [Citation.]" (*Geier v. American Honda Motor Co., supra*, 529 U.S. at p. 868.)

*Geier* also announced two further holdings relevant to this case. First, it concluded "[n]othing in the language of the saving clause suggests an intent to save state-law tort actions that conflict with federal regulations" (*Geier v. American Honda Motor Co., supra*, 529 U.S. at p. 869) and thus it "does *not* bar the ordinary working of conflict pre-emption principles." (*Ibid.*)

Second, *Geier* held "a common-law 'no airbag' action like the one before us actually conflicts with FMVSS 208." (*Geier v. American Honda Motor Co., supra*, 529 U.S. at p. 874.) In reaching this conclusion, *Geier* reviewed FMVSS 208's history and DOT's explanation for its decision not to require airbags in all vehicles. (529 U.S. at pp. 875–880.) The court rejected the

"view[ that] FMVSS 208 sets a minimum airbag standard. . . . The . . . []DOT's[] comments, which accompanied the promulgation of FMVSS 208, make clear that the standard deliberately provided the manufacturer with a range of choices among different passive restraint devices," that "would bring about a mix of different devices introduced gradually over time; and FMVSS 208 would thereby lower costs, overcome technical safety problems, encourage technological development, and win widespread consumer acceptance— all of which would promote FMVSS 208's safety objectives. [Citation.]" (*Id.* at pp. 874–875.)

*Geier* thus found the regulation " 'embodies the Secretary[ of Transportation]'s policy judgment that safety would best be promoted if manufacturers installed *alternative* protection systems in their fleets rather than one particular system in every car.' [Citation.] Petitioners' tort suit claims that the manufacturers . . . 'had a duty to design, manufacture, distribute and sell a motor vehicle with an effective and safe passive restraint system, including, but not limited to, airbags.' [Citation.] [¶] In effect, petitioners' tort action depends upon its claim that manufacturers had a duty to install an airbag when they manufactured the [car]. Such a state law—*i.e.*, a rule of state tort law imposing such a duty—by its terms would have required manufacturers of all similar cars to install airbags rather than other passive restraint systems, such as automatic belts or passive interiors. It thereby would have presented an obstacle to the variety and mix of devices that the federal regulation sought. . . . Because the rule of law for which petitioners contend would have stood 'as an obstacle to the accomplishment and execution of' the important means-related federal objectives that we have just discussed, it is pre-empted. [Citations.]" (*Geier v. American Honda Motor Co., supra,* 529 U.S. at pp. 881–882.)

While *Geier* is distinguishable because it dealt with passive restraints, not seatbelts, its analysis of FMVSS 208 rejected *Ketchum*'s approach in determining the preemptive effect of that safety standard. Furthermore, subsequent appellate decisions involving tort actions challenging the use of lap-only seatbelts have followed *Geier* and held these lawsuits are preempted under FMVSS 208. In *Hurley v. Motor Coach Industries, Inc.* (7th Cir. 2000) 222 F.3d 377, the court ruled a bus driver's action against the vehicle's manufacturer for installing a lap-only seatbelt was preempted. "*Geier* noted the controversy over the efficacy and utilization of airbags and seat belts and concluded that FMVSS 208 'deliberately sought variety' by leaving the choice of passenger protection system up to manufacturers. [Citation.]" (*Id.* at p. 382.) In *Griffith v. General Motors Corp.* (11th Cir. 2002) 303 F.3d 1276, the court held FMVSS 208 preempted a design defect claim asserted by a plaintiff injured in an accident while seated in the front center seat of a truck wearing a lap-only seatbelt. (*Griffith,* at p. 1283.)

More apropos to this case, three other appellate decisions have applied *Geier*'s approach to hold defective design lawsuits challenging an automobile manufacturer's use of a lap-only seatbelt at the inboard position of a passenger vehicle's rear seat were preempted by FMVSS 208. (*Carden v. General Motors Corp.* (5th Cir. 2007) 509 F.3d 227, 231–232; *Roland v. General Motors Corp.* (Ind.Ct.App. 2008) 881 N.E.2d 722, 727; *Heinricher v. Volvo Car Corporation* (2004) 61 Mass.Ct.App. 313 [809 N.E.2d 1094, 1098].)

These decisions considered and rejected many of the arguments raised by plaintiffs in this appeal. For example, citing the statutory definition of a motor vehicle safety standard and language appearing in the NHTSA's explanations of its rule-making decisions, plaintiffs describe FMVSS 208's regulations governing the installation of seatbelts as minimum standards. *Carden* rejected a similar claim: "A review of the regulatory and rule making history of FMVSS 208 supports the conclusion that the NHTSA's decision to allow car manufacturers the option to install either lap-only or lap/shoulder seat belts in the rear center seating position of passenger vehicles was deliberate, and the agency identified specific policy reasons for its decision. . . . [W]hen FMVSS 208 was initially promulgated, the DOT required either lap-only or lap/shoulder seat belts in each seating position in passenger vehicles. [Citation.] As technology advanced and seatbelt use became more widespread, seatbelt requirements evolved. In 1989, noting the decreased cost and increased use of seatbelts in rear seating positions, the NHTSA amended FMVSS 208 to require the use of lap/shoulder seat belts in rear outboard seating. [Citation.] The commentary preceding the final rules indicates that the NHTSA considered comments suggesting that lap/shoulder seat belts be required in the rear center seating position as well, but decided to leave manufacturers the option to select between lap-only and lap/shoulder belts. [Citation.] In excluding the rear center seat from this requirement, the agency explained that 'there [were] more technical difficulties associated with any requirement for lap/shoulder belts at center rear seating positions, and that lap/shoulder belts at center rear seating positions would yield small safety benefits and substantially greater costs, given the lower center seat occupancy rate and the more difficult engineering task.' [Citation.] Based on this language, it is clear that the agency's decision was deliberate and based on managing technological constraints and cost efficiency." (*Carden v. General Motors Corp., supra*, 509 F.3d at pp. 231–232, fns. omitted.)

Plaintiffs also assert that "[u]nlike *Geier*, this case does *not* involve airbags, passive restraint devices, or the unique policy judgments made by NHTSA when it promulgated the . . . version of FMVSS 208 governing passive restraints." *Griffith* rejected the argument that *Geier* was limited to lawsuits involving a manufacturer's choice between passive restraint options.

"[T]he Supreme Court . . . framed the issue as one of intent. In implementing the Congressional mandate to reduce the number of vehicular deaths, did DOT intend to establish only certain minimum safety standards, beyond which a state would be free to require more, or did it deliberately design a regulatory scheme which provides specific passenger restraint options, no one of which would state law be free to foreclose? [¶] In *Geier*, the Court found that the rule-making history of FMVSS 208 makes clear that DOT saw it not merely as a minimum standard, but as a comprehensive regulatory scheme. [Citation.] DOT intended and expected FMVSS 208 to produce a mix of restraint devices, both passive and manual, in cars and trucks. [Citation.] DOT's own contemporaneous explanation of FMVSS 208 was that it believed this mix would maximize the likelihood that people would actually use the passenger restraint systems installed in their cars and trucks. [Citations.]" (*Griffith v. General Motors Corp., supra*, 303 F.3d at pp. 1280–1281, fn. omitted; see also *Roland v. General Motors Corp., supra*, 881 N.E.2d at p. 727 ["NHTSA's regulation of seat belt use was motivated by the same policy concerns . . . identified in *Geier* as the basis for the agency's decision to permit various passive restraint options: safety and consumer acceptance (with respect to child restraints), technical difficulties (including issues as to anchor locations and possible interference with the rear view mirror), and lowering costs to encourage technological developments."].)

A third argument plaintiffs assert is that this case is governed by the United States Supreme Court's later decision in *Sprietsma v. Mercury Marine* (2002) 537 U.S. 51 [154 L.Ed.2d 466, 123 S.Ct. 518]. *Sprietsma* arose from the death of a woman after she fell off a boat and was struck by the blades of the boat's outboard motor. Her husband sued the motor's manufacturer, alleging the product was unreasonably dangerous because it lacked a propeller guard. In state court, the defendant succeeded in having the lawsuit dismissed on the ground it was preempted under the Federal Boat Safety Act of 1971 (46 U.S.C. § 4301 et seq.) because the United States Coast Guard, which had the authority to issue regulations under the Act, had studied the issue and chosen not to adopt a regulation requiring the installation of propeller guards.

The United States Supreme Court reversed. In response to the defendant's claim of implied preemption arising from the Coast Guard's inaction, it noted, "The Coast Guard's decision *not* to impose a propeller guard requirement presents a sharp contrast to the decision of the Secretary of Transportation that was given pre-emptive effect in *Geier* . . . ." (*Sprietsma v. Mercury Marine, supra*, 537 U.S. at p. 67.) Thus "[i]t is quite wrong to view that decision as the functional equivalent of a regulation prohibiting all States and their political subdivisions from adopting such a regulation. The decision . . . to 'take no regulatory action,' [citation], left the law applicable to propeller

guards exactly the same as it had been before the subcommittee began its investigation. . . . [¶] Indeed, history teaches us that a Coast Guard decision not to regulate a particular aspect of boating safety is fully consistent with an intent to preserve state regulatory authority pending the adoption of specific federal standards." (*Id.* at p. 65.)

As explained in *Carden v. General Motors Corp., supra*, 509 F.3d 227, "*Sprietsma* involved a complete absence of regulatory action, which was not the case here. As discussed above, the NHTSA identified particular policy reasons for its decision to allow manufacturers the option of selecting between the two seat belt designs, and included this option as a part of a comprehensive regulatory scheme. [Citation.] Thus, *Sprietsma* does not control." (*Id.* at p. 232; see also *Roland v. General Motors Corp., supra*, 881 N.E.2d at pp. 728–729.)

Plaintiffs also claim *Sprietsma* stands for the proposition that NHTSA's "analysis of technical feasibility, costs, and relative safety benefits" does not "reflect any authoritative message of federal policy against lap/shoulder belts in rear-center seats." This argument misstates the Supreme Court's opinion in *Sprietsma*. After quoting the Coast Guard's explanation for rejecting a propeller guard requirement and discussing the reasons given by that agency, the court concluded "although the Coast Guard's decision . . . was undoubtedly intentional and carefully considered, it does not convey an 'authoritative' message of a federal policy against propeller guards." (*Sprietsma v. Mercury Marine, supra*, 537 U.S. at p. 67.) Thus, *Sprietsma* does not bar a federal regulation from having a preemptive effect simply because the agency employs a "cost-benefit analysis" to reach its decision. In fact, by statute, DOT and NHTSA are required to consider factors such as feasibility and cost in issuing motor vehicle safety standards. (49 U.S.C. § 30111(b)(1), (3), (4).)

Plaintiffs also rely on *Chevere v. Hyundai Motor Co.* (N.Y.App.Div. 2004) 4 A.D.3d 226 [774 N.Y.S.2d 6]. *Chevere* involved an action where a passenger, wearing an automatic seatbelt but not the available manual lapbelt, died in what the appellate division described as "an 'ordinary, easily survivable' intersection collision at no more than moderate speed . . ." in which "the adequacy of the restraint system in plaintiff's vehicle was a crucial factor in the assessment of liability against the . . . defendants." (*Id.*, 774 N.Y.S.2d at p. 7.) The court rejected the defendants' preemption defense, declaring "*Geier* does not automatically exempt automobile manufacturers from liability whenever a federal regulation provides them with options as to the type of restraint system to be employed. Nothing in that decision bars allegations of strict products liability, breach of warranty and negligence in a state action. *Geier* precludes actions alleging a general failure to equip a vehicle properly, but

does not preclude common-law claims against a manufacturer who has unreasonably opted to meet only minimum performance requirements [citation]." (*Ibid.*)

*Chevere* is questionable because the foregoing statement is conclusory and lacks any supporting analysis for its interpretation of *Geier*. In any event, *Chevere* is distinguishable. The only legal authority the New York court cited to support its holding is a pre-*Geier* decision, *King v. Ford Motor Co.* (6th Cir. 2000) 209 F.3d 886. *King* rejected the defendants' preemption argument because the " 'plaintiffs' position was not that the design choice made by defendants for protecting against frontal collisions—an automatic shoulder belt and knee bolster—was inherently defective but that the specific design was defective due to failure to use load limiters and/or change the location of the knee bolster and/or change the location of the belt anchor.' " (*Id.* at p. 892.)

*King* was premised on a theory the specific vehicle involved in the accident had a structural design flaw, not that the defendant had chosen the wrong passenger restraint option. The limited factual summary in *Chevere* suggests it may well have involved a similar theory of recovery. Furthermore, this approach is consistent with *Geier*. There, the Supreme Court recognized "[i]t is possible that some special design-related circumstance concerning a particular kind of car might require airbags, rather than automatic belts, and that a suit seeking to impose that requirement could escape pre-emption—say, because it would affect so few cars that its rule of law would not create a legal 'obstacle' to [FMVSS] 208's mixed-fleet, gradual objective. But that is not what petitioners claimed. They have argued generally that, to be safe, a car must have an airbag. [Citation.]" (*Geier v. American Honda Motor Co., supra,* 529 U.S. at pp. 885–886; see also *Jamison v. Ford Motor Co.* (Ct.App. 2007) 373 S.C. 248, 265 [644 S.E.2d 755, 764] [" 'compliance with performance criteria does not immunize manufacturers from common law liability arising from any defects in the production or design of their . . . restraint systems' "].)

Plaintiffs allege defendants defectively designed the minivan, in part, by equipping "[t]he center seating position of the middle bench seat . . . with an inferior and unsafe lap-only belt that did not provide adequate protection in frontal collisions because it did not restrain the upper torso of decedent Thanh Williamson . . . ." In effect, they seek to hold defendants liable for choosing the lap-only seatbelt option for a rear inboard seat position. If successful, plaintiffs' claim would bar motor vehicle manufacturers from employing one of the passenger restraint options authorized by FMVSS 208 because it would effectively require them to install only lap/shoulder seatbelts at inboard seating positions to avoid liability under California law. Such a result would

"stand as an obstacle to the implementation of the comprehensive safety scheme promulgated in [FMVSS] 208" (*Heinricher v. Volvo Car Corp., supra*, 809 N.E.2d at p. 1098) and is therefore preempted.

■ The United States Supreme Court's decision in *Geier* is binding on us (*Forsyth v. Jones* (1997) 57 Cal.App.4th 776, 782 [67 Cal.Rptr.2d 357]) but, as noted, *Geier* is distinguishable because it dealt with passive restraints. The post-*Geier* cases considering FMVSS 208's preemptive effect on an automobile manufacturer's choice of passenger restraint systems are not controlling precedent in California. (*Ritschel v. City of Fountain Valley* (2006) 137 Cal.App.4th 107, 120 [40 Cal.Rptr.3d 48] [even when interpreting federal law the " '[d]ecisions of lower federal courts . . . are not binding on state courts' "]; *Lebrilla v. Farmers Group, Inc.* (2004) 119 Cal.App.4th 1070, 1077 [16 Cal.Rptr.3d 25] ["Decisions of the courts of other states are only regarded as 'persuasive . . . depending on the point involved.' "]; *Forsyth v. Jones, supra*, 57 Cal.App.4th at p. 782 [" 'decisions of the lower federal courts, while persuasive, are not binding on us' "].) However, these cases have almost uniformly found FMVSS 208 preempts common law actions alleging a manufacturer chose the wrong seatbelt option and we find their analysis to be persuasive. Therefore, we conclude that to the extent plaintiffs contend defendants are liable for failing to install a lap/shoulder seatbelt in the minivan's middle row inboard seat, their claim is barred by the version of FMVSS 208 in effect when defendants manufactured the minivan.

### 4. *Plaintiffs' Remaining Theories of Recovery*

Plaintiffs note the third amended complaint alleged other design defect claims not covered by FMVSS 208, including a lap-only belt "anchored at an unsafe angle," several "seating positions" "unreasonably susceptible to ramping and submarining of passengers" because of "[t]he angle, geometry, and composition of the seat bottom," "seat backs" incapable of "sufficiently withstand[ing] foreseeable forces in a frontal collision," and the vehicle's lack of "sufficient energy-absorbing materials and structures to absorb reasonable amounts of force from a frontal collision . . . ." In addition, citing the principle that "a product flawlessly designed and produced may nevertheless possess such risks to the user without a suitable warning that it becomes 'defective' simply by the absence of a warning" (*Cavers v. Cushman Motor Sales, Inc.* (1979) 95 Cal.App.3d 338, 347 [157 Cal.Rptr. 142]), plaintiffs contend their failure to warn theory is not preempted by FMVSS 208. Thus, they argue, "even if this court finds that the lap/shoulder belt theory is preempted, the judgment should still be reversed and the case remanded for further proceedings on the other remaining theories of liability."

Plaintiffs waived these claims. They stipulated to dismiss with prejudice all injury claims relating to plaintiffs Delbert and Alexa Williamson. As for Thanh Williamson's death, plaintiffs acknowledged both in the third amended complaint and at the hearing on the demurrer that without the ability to challenge defendants' failure to install a lap/shoulder seatbelt they could not proceed on the remaining theories of liability. The third amended complaint declared all "[t]he defects . . . alleged . . . were joint and concurrent causes . . . such that each defect . . . cannot be evaluated and adjudicated separately but must be evaluated and adjudicated together." Consequently, "the injuries to Thanh Williamson were the result of all of the defects" and, "[b]ut for the presence of all of these defects, [her] injuries would not have been severe nor would she have died . . . ."

At the hearing on the demurrer, the trial judge expressed his opinion the inability to hold defendants "liable for choosing a two-point seatbelt instead of a three-point seatbelt" did not "mean that [they] couldn't state a cause of action based" on "any other tort theory." Defense counsel even agreed with this observation, stating, "We are not arguing that they are preempted from alleging that the seat[]back in the vehicle is defective. [¶] We're not arguing that they're preempted from saying the seat cushion is defective or the vehicle structure is defective." But in response, plaintiffs' attorney declared "with the court's ruling as it presently stands, I don't think I could put on a case on behalf of my clients," explaining "the [seat]belt is integral" to the case, and "[i]f you strike all these [defective seatbelt] allegations, I am left with nothing."

In light of the concessions contained in the third amended complaint and counsel's comments, plaintiffs' alternative theories of recovery are also barred by federal preemption. (*Carden v. General Motors Corp., supra,* 509 F.3d at p. 233 [where failure to warn and other defect claims are "premised on defective design claims found to be preempted," they are "also preempted federal law"]; *Irving v. Mazda Motor Corp.* (11th Cir. 1998) 136 F.3d 764, 769–770 [where the plaintiff "tied the claims of defective design and failure to warn together" and the "defective-design claim is preempted by FMVSS 208, there was no defect about which to warn"]; *Roland v. General Motors Corp., supra,* 881 N.E.2d at pp. 729–730 ["misrepresentation and failure to warn claims" preempted where they "depend on . . . contention that a lap belt is defective and are a roundabout attempt to challenge the choice provided by FMVSS 208 as part of a comprehensive regulatory scheme"].) Therefore, the trial court properly sustained the demurrer without leave to amend as to the allegations of Thanh Williamson's injuries and death.

## DISPOSITION

The judgment is affirmed. Respondents' request that we take judicial notice of portions of the Federal Register relating to FMVSS 208 is granted. Respondents are entitled to recover their costs on appeal.

Sills, P. J., and Ikola, J., concurred.

A petition for a rehearing was denied November 18, 2008, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied February 11, 2009, S168717. Werdegar, J., did not participate therein.