Voncelle ANTHONY and Voncelle Anthony for and on behalf of Kamari Lewis, Plaintiffs,

v.

Richard ABBOTT, Mazda of North America, Inc. d/b/a Mazda North America Operations, Defendants.

No. CIV.1999–78.

District Court, Virgin Islands, Appellate Division, D. St. Thomas and St. John.

Oct. 28, 2003.

Joseph Caines, Esq., St. Thomas, VI, for Plaintiffs.

Bruce P. Bennett, Esq., Hunter, Cole & Bennett, St. Croix, VI, for Defendant MNAO.

## MEMORANDUM OPINION

MOORE, District Judge.

On October 22, 1999, Voncelle Anthony ["Anthony"] brought this personal injury action for herself and on behalf of her nine-year old son Kamari Lewis ["Lewis"] [collectively "plaintiffs"] against Richard Abbott and Mazda Motor of America, Inc. doing business as Mazda North America Operations ["MNAO"] to recover for injuries arising from a collision on St. John on May 21, 1997 with a vehicle driven by Mr. Abbott. MNAO distributed the Mazda B3000 vehicle that plaintiff Anthony was driving. The amended complaint alleges that MNAO is liable to plaintiffs for: negligent infliction of emotional distress, negligence, breach of express and implied warranties, and strict liability. (Id. ¶¶ 113–162.)

MNAO has moved for summary judgment on Lewis's claims and has appealed the magistrate judge's May 8, 2001 Order directing that portions of a Ford/Mazda Vehicle Supply Agreement be disclosed. Because MNAO has established pre-emption and other grounds for dismissal, I will grant summary judgment on some of Lewis's claims. Furthermore, because the plaintiffs have not shown why any part of the supply agreement should be disclosed, I will vacate the May 8, 2001 Order of the magistrate judge.

## I. FACTUAL AND PROCEDURAL HISTORY

The amended complaint generally alleges that MNAO is liable for an exploding airbag in the Mazda B3000 that partially inflated during the collision and emitted fumes that caused severe injuries to Voncelle Anthony. (Id. ¶¶ 15–19,21.) The amended complaint also generally alleges that the collision caused nine-year-old Kamari Lewis to hit his head and suffer contusions even though he was wearing his seat belt. (Id. ¶¶ 31–34.)

In Count III, both plaintiffs allege that MNAO is liable for negligently manufacturing a product that proximately caused their injuries. (Id. ¶¶ 113–132.) Kamari Lewis specifically alleges that MNAO owed a duty to him to "design, construct, manufacture, inspect and test the automobile to render it suitable for the ordinary purposes for which it was intended." (Id. ¶ 127.) Further, Lewis alleges that MNAO caused him injury by its negligence in distributing the Mazda B3000, by failing to warn or give adequate notice, by failing to incorporate safety devices, and by "intentionally failing to include a side air bag to save a few dollars." (Id. ¶ 129, 131.)

For their warranty claims in Counts V and VI, both plaintiffs allege the breach of the warranties to be an "inherently dangerous ... airbag susceptible to rupture and explosion as a result of an impact." (Id. ¶¶ 145, 155.) Both counts claim that the nine-year-old Lewis was injured by the airbag. (Id. ¶¶ 152, 156.) In Count VII for strict liability, plaintiffs claim that MNAO knew the vehicle was "inherently defective and dangerous" specifically because of the airbag. (Id. at 159.) Plaintiffs then allege that "[t]hose defects rendered the Mazda B3000 an unreasonably dangerous product ... for which defendant Mazda Corporation (manufacturer) is strictly liable in tort" and that Lewis suf-

fered damages proximately caused by MNAO's design and manufacture of an unreasonably dangerous *vehicle.* (*Id.* ¶¶ 160–161.)

## II. DISCUSSION

### A. Standard of Review

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue respecting any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Sharpe v. West Indian Co.,* 118 F.Supp.2d 646, 648 (D.Vi.2000). The nonmoving party may not rest on mere allegations or denials, but must establish by specific facts that there is a genuine issue for trial from which a reasonable juror could find for the nonmovant. *See Saldana v. Kmart Corp.,* 42 V.I. 358, 360–61, 84 F.Supp.2d 629, 631–32 (D.Virgin Islands 1999), *aff'd in part and rev'd in part,* 260 F.3d 228 (3d Cir.2001). Only evidence admissible at trial shall be considered and the Court must draw all reasonable inferences therefrom in favor of the nonmovant. *See Id.*

### B. Kamari Lewis' claims against MNAO based on its failure to install a side airbag are preempted by federal law

■ I agree with MNAO that the common law tort claim in Count III based on the failure to install a side airbag is preempted by the National Traffic and Motor Vehicle Safety Act. *See Geier v. American Honda Motor Company,* 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000). In *Geier,* the Supreme Court held that a plaintiff's common law tort claim alleging that the defendant car manufacturer was negligent for failing to install an "airbag" actually conflicted with section 208 of the Federal Motor Vehicle Safety Standard ["FMVSS 208"] promulgated by the Department of Transportation ["DOT"] because that section did not require a car manufacturer to install a particular kind of passive restraints, like airbags and automatic seat belts. *Id.* at 864, 120 S.Ct. 1913.[1] FMVSS 208 gave the manufacturers the option of choosing among several different passive restraint mechanisms as long as they met the specified performance requirement. 49 Fed. Reg. 28990, 28996 (1984). Lewis' allegation that MNAO had a duty under common law to install a particular passive restraint, namely, a side airbag, thus *actually conflicts* with FMVSS 208 and is implicitly pre-empted.

■ Lewis has not attempted to bring his claim within the narrow "special design-related circumstance concerning a particular kind of car [that] might require airbags, rather than automatic belts" where such a claim "would affect so few cars that its rule of law would not create a legal 'obstacle' to 208's mixed-fleet, gradual objective." *See Id.* at 885, 120 S.Ct. 1913. Nor has Lewis countered MNAO's affidavits evidencing their compliance with the FMVSS 208. The 1995 Mazda B3000 was given three passive restraint options under 49 C.F.R. 571.208, S4.2. (Def.'s Mot. Summ. J., Exh. A., Ruth Aff. ¶ 3.) MNAO chose the third option and installed a lap and shoulder belt protection system with a seat belt warning system at the driver's position. (*Id.*) The affiant states that the

---

1. " '[P]assive occupant restraint systems' are devices that do not depend for their effectiveness upon any action taken by the occupant except that necessary to operate the vehicle. Two types of automatic crash protection emerged: automatic seatbelts and airbags." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 34–35, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

system fully complied with FMVSS 208. (*Id.* at 4.) [2] According to another MNAO affiant, the belt protection system in Anthony's truck, specifically, was fully functional. (Def.'s Mot. Summ. J., Exh. B, Breen Aff. ¶ 3.) Accordingly, I will grant summary judgment in favor of MNAO and dismiss Lewis' claims based on MNAO's "failure to incorporate a side airbag" in Count III. (Am.Comp.¶ 129.)

### C. Summary judgment is proper for Kamari Lewis' insufficiently pleaded claims that do not raise a genuine issue of material fact

■ Kamari Lewis has consistently plead, testified in deposition, and argued here that he was injured when his head hit the dashboard and *not by any contact with the defective airbag.* (Am. Compl. ¶¶ 33–35; Lewis Dep. at p. 53; Pl.'s Mot. Opp. Summ. J. at 4.) A reasonable jury could not award him damages on claims for a defective airbag that he does not allege had anything to do with his injuries. *See Saldana,* 42 V.I. at 360–61, 84 F.Supp.2d 629. Thus, I agree with MNAO that the fact that the allegedly defective airbag did not cause Kamari Lewis' injuries is undisputed. Therefore, I will grant summary judgment for all of Lewis' claims that are predicated on the defective airbag, namely: Count V (breach of implied warranty related only to the defective airbag), (*id.* ¶ 145), Count VI (same for breach of express warranty), (Am.Compl.¶ 155), Count VII (strict liability claim where "defect" was

the airbag), (*id.* ¶ 159), and Count IX (to extend punitive damages for malfunctioning of airbag) (*id.* ¶¶ 168–175).[3]

Lewis' remaining portions of Count III for negligence and Counts VIII–X for damages withstand summary judgment to the extent that they sound in negligence and are not predicated on the defective airbag.[4]

### D. Plaintiffs have not shown that the Supply Agreement is discoverable

On June 15, 2000, the magistrate judge ordered MNAO to provide discovery with respect to its relationship with Ford in marketing the 1995 B–3000 truck. On August 15, 2000, MNAO submitted the affidavit of its assistant corporate secretary, Masashi Aihara, as a supplemental discovery response regarding " 'Ford's relationship to [d]efendant Mazda' in connection with the 1995 Mazda B3000 Truck …" (Supp. Disc. Resp. at 1.) Aihara stated that the Mazda B3000 was manufactured by Ford and distributed by Mazda pursuant to a Ford/Mazda Vehicle Supply Agreement ["Supply Agreement"]. (Aihara Aff. ¶¶ 3–5.) Under the Supply Agreement, Ford was responsible for the "design, testing and manufacture of all aspects of the [Mazda B3000] related to the Federal Motor Vehicle Safety Standards and other safety related items." (*Id.* at ¶ 7.) Aihara also cautioned that the Supply Agreement contained "highly proprietary, confidential

---

2. The vehicle was also equipped with a "supplemental driver's side airbag" even though FMVSS 208 did not require such an additional safety feature. (Def.'s Mot. Summ. J., Exh. A., Ruth Aff. ¶ 3.)

3. Plaintiffs have failed to establish the need for further discovery under Rule 56(f) of the Federal Rules of Civil Procedure. Not only have they failed to assert how the Rule 30(b)(6) deposition would help to establish genuine factual disputes to avoid summary

judgment against Kamari Lewis, it is clear that no conceivable discovery could mitigate the effect of Lewis' deposition testimony admitting that he was not injured by the airbag.

4. Defendant MNAO's request for costs will be denied, since the plaintiffs were correct in arguing that *Geier* did not pre-empt all of their alternate theories of liability and since some of Lewis' claims against MNAO survive summary judgment.

and trade secret information" and that the "wholesale release" of such information could be used by MNAO's competitors to undermine its marketing. (*Id.*)

On September 21, 2000, plaintiffs filed a motion to compel discovery and a motion for sanctions without specifying what discovery was being sought. On October 6, 2000, MNAO opposed these motions and cross-moved for a protective order. Plaintiffs have never filed an opposition to the cross-motion for protective order.

At a March 21, 2001 hearing, the magistrate judge ordered that the Supply Agreement be filed under seal for his *in camera* review to determine whether any portion was discoverable by plaintiffs. MNAO filed the document under seal on April 2, 2001, protesting that it was "commercial information" protected under Rule 26(c)(7) of the Federal Rules of Civil Procedure. After reviewing the document *in camera*, the magistrate judge ordered the disclosure of the portions of the Agreement that he found to be discoverable on May 8, 2001. (Sealed Order Compelling Production at 3–4.) The magistrate judge then granted the motion to compel and denied the cross-motion for a protective order. (*Id.* at 4.) MNAO has appealed this ruling to the district judge.

Rule 72.1 of the Local Rules of Civil Procedure states, in pertinent part: "Any party may appeal from a Magistrate Judge's determination of a non-dispositive matter.... A District Judge shall consider the appeal and set aside any portion of the Magistrate Judge's order found to be *clearly erroneous or contrary to law.*" LRCi 72.1(3)(A) (emphasis added). MNAO alleges that the magistrate judge's May 8, 2001 Order requiring it to produce portions of the supply agreement "suffers from serious procedural, technical, and

substantive error ...." (Def.'s LRCi 72.1 Br. at 7.) [5]

█  I agree that the magistrate judge erred by ordering disclosure without requiring the plaintiffs to specifically request production of the supply agreement after MNAO's August 2000 Aihara Affidavit disclosed its existence and its relevant contents. More importantly, the plaintiffs have not shown how the actual contents of the supply agreement are relevant to any issues in this case. The only reason articulated by plaintiffs during argument was the possible contribution of Ford Motor Company if MNAO was found liable. There is no basis for the production of clearly privileged commercial information. The Aihara affidavit discloses to plaintiffs all that is relevant concerning MNAO's relationship with Ford, namely, that Ford manufactures the vehicle and MNAO distributes it, that Ford did all the design, testing, and manufacturing of safety items under the FMVSS.

Even assuming that plaintiffs had established the relevance of the contents of the supply agreement, they certainly have failed to overcome MNAO's claim of privilege by demonstrating *what* relevant issues "may only be answered by reviewing the agreement." (*Id.*) Moreover, MNAO has already disclosed through the Aihara affidavit that the supply agreement makes Ford partially liable as the manufacturer and has also admitted that it is in the distribution chain and may share liability if some product defect were found. The Supply Agreement contains proprietary information about the partners and how they have structured their business relationship. I thus cannot find that such proprietary information is relevant or necessary in this case.

---

**5.** Plaintiffs have not filed any response to defendant's LRCi 72.1 Appeal of the Magistrate Judge's disclosure order.

672

Accordingly, I will vacate the Magistrate Judge's May 8, 2001 Order requiring the disclosure of any part of the supply agreement.

## III. CONCLUSION

Because Kamari Lewis' claims for failure to incorporate a side air bag conflict with the federal regulatory framework, they are pre-empted. Because Kamari Lewis concedes in his deposition testimony that he was injured when he hit the dashboard and not by the driver's side airbag, summary judgment is appropriate on all his claims seeking damages as a result of the allegedly defective airbag. I will vacate the May 8, 2001 Order requiring disclosure of portions of the Ford/Mazda Vehicle Supply Agreement, because plaintiffs have failed to establish its relevance to this case or the need for its disclosure.

### ORDER

For the reasons given in the accompanying Memorandum Opinion of even date, it is now

**ORDERED**, that partial summary judgment against Kamari Lewis with respect to Count III's claims for "failure to incorporate a side airbag" is **GRANTED**; and it is further

**ORDERED**, that partial summary judgment against Kamari Lewis with respect to all claims predicated on the defective airbag in the complaint, namely: Count V (breach of implied warranty related only to the defective airbag), (*id.* ¶ 145), Count VI (same for breach of express warranty), (Am.Compl.¶ 155), Count VII (strict liability claim where "defect" was the airbag), (*id.* ¶ 159), and Count IX (to extend punitive damages for malfunctioning of airbag) in Counts I and II is **GRANTED**; and it is further

**ORDERED**, that the Magistrate Judge's May 8, 2001 Order disclosing por-

tions of the Vehicle Supply Agreement is **VACATED**.