**Elvis Marty ELLISON and Erin Ellison, Plaintiffs,**

v.

**FORD MOTOR COMPANY, Defendant.**

**Civil Action No. 4:07–CV–0160–HLM.**

United States District Court,
N.D. Georgia,
Rome Division.

Aug. 27, 2009.

---

Lance Alan Cooper, Cooper Jones & Cooper, Patrick Alan Dawson, Dawson P.C., Marietta, GA, Robert Kirtley Finnell, The Finnell Firm, Rome, GA, for Plaintiffs.

Curtis Eugene Jimerson, Bowman and Brooke, LLP, San Jose, CA, James Barton Manley, Jr., Charles Kyle Reed, Michael R. Boorman, McKenna Long & Aldridge, Audrey K. Berland, Alston & Bird, LLP, Atlanta, GA, Sandra Giannone Ezell, Bowman and Brooke, Richmond, VA, for Defendant.

## ORDER

HAROLD L. MURPHY, District Judge.

This is a products liability action. This case is before the Court on Defendant's Motion for Summary Judgment [114].

## I.  Background

Keeping in mind that when deciding a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the Court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.,* 496 F.3d 1231, 1241

(11th Cir.2007) (observing that, in connection with summary judgment, court must review all facts and inferences in light most favorable to non-moving party). This statement does not represent actual findings of fact. *In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir.2007). Instead, the Court has provided the statement simply to place the Court's legal analysis in the context of this particular case or controversy.

## A. Factual Background
### 1. The Parties

Plaintiffs reside in Floyd County, Georgia. (Compl. ¶ 1.) Defendant is a Michigan corporation engaged in the business of manufacturing, designing, testing, inspecting, distributing, and selling motor vehicles. (*Id.*, ¶ 2.)

### 2. The Collision and the Subject Vehicle

This case arises from a motor vehicle accident in which Plaintiff Elvis Marty Ellison ("Mr. Ellison") was driving a 2004 F–250 pick-up truck (the "subject vehicle"). (Def.'s Statement of Material Facts ("DSMF") ¶ 1; Pls.' Resp. DSMF("PRDSMF") ¶ 1.)

On August 18, 2005, Mr. Ellison was driving the subject vehicle southbound on Georgia Loop 1, while his wife, Plaintiff Erin Ellison ("Mrs. Ellison") rode as a passenger in that vehicle. (Def.'s Mot. Summ. J. Ex. B.) At the same time, Brandon Howard was operating a Ford F–450 commercial truck westbound on Highway 411, toward the intersection of Georgia Loop 1 and Highway 411. (*Id.*) Mr. Howard failed to stop for a red light at the intersection, and struck Plaintiffs' vehicle at an angle on the front driver's side. (*Id.*) The collision caused a chain reaction that ultimately involved five more vehicles at the intersection of Georgia Loop 1 and Highway 411. (*Id.*) Mr. Ellison suffered a head injury in the collision.

The subject vehicle was manufactured in March 2004. (DSMF ¶ 2; PRDSMF ¶ 2.) The subject vehicle has a gross vehicle weight rating ("GVWR") of 8,800 pounds. (DSMF ¶ 3; PRDSMF ¶ 3.) [1] The subject vehicle incorporated into its design frontal impact airbags in the driver and front passenger seating positions, knee bolsters in front seating positions, a collapsible steering column, and additional passive occupant protection devices. (Aff. of Howard Slater ¶ 9.) The subject vehicle also is equipped with active lap/shoulder seatbelt assemblies that include emergency locking retractor mechanisms in the front driver and passenger seating positions. (*Id.* ¶ 12.)

Ellison Trucking Company purchased the subject vehicle from Rome Ford Lincoln Mercury. (DSMF ¶ 16; PRDSMF ¶ 16.) Plaintiffs did not own the subject vehicle at anytime. (DSMF ¶ 17; PRDSMF ¶ 17.)

Plaintiffs received a copy of the Owner's Manual for the subject vehicle before the collision. (DSMF ¶ 13; PRDSMF ¶ 13.) Plaintiffs did not read every page of the Owner's Manual for the subject vehicle

---

1. The Court has not included the portions of DSMF that relate to the applicability and requirements of Federal Motor Vehicle Safety Standard ("FMVSS") 208 and the subject vehicle's alleged compliance with that standard, as those issues are matters for the Court to determine, not proper proposed statements of material fact. Thus, the Court does not include most of the statements contained in DSMF ¶¶ 4–12 in this background section.

Similarly, the Court does not include the portions of the Affidavit of Allan J. Kam, which Plaintiffs presented, that opine as to the applicability of FMVSS 208 versus FMVSS 214 and Defendant's alleged failure to comply with FMVSS and the nature, purpose, and impact of the FMVSS. Again, those are primarily legal issues for the Court to determine.

prior to the collision. (DSMF ¶ 14; PRDSMF ¶ 14.) Plaintiffs did not read available warnings contained in the Owner's Manual for the subject vehicle prior to the collision. (DSMF ¶ 15; PRDSMF ¶ 15.) Plaintiffs assert that they were not aware of the potential dangers posed by the lack of side airbags with head protection in the subject vehicle. (Aff. of Elvis Marty Ellison ¶ 3; Aff. of Erin Ellison ¶ 3.) According to Mr. Ellison, he would not have been driving the subject vehicle on the date in question if he had been warned of those dangers. (Elvis Ellison Aff. ¶ 4.) According to Mrs. Ellison, if she had been warned of the dangers associated with the lack of side airbags with head protection in the subject vehicle, she would not have been a passenger in the subject vehicle, and would not have allowed Mr. Ellison to drive the subject vehicle, on the date in question. (Erin Ellison Aff. ¶ 4.)

## B. Procedural Background

On August 15, 2007, Plaintiffs filed this lawsuit. (Docket Entry No. 1.) In count one of their Complaint, Plaintiffs assert a products liability claim under a strict liability theory. (Compl. ¶¶ 8–16.) Plaintiffs contend that the subject vehicle is

unreasonable and dangerously defective in its design, manufacture and as marketed in the following particulars:

(a) failing to have a side airbag system which would have provided Mr. Ellison with head impact protection;

(b) failing to have adequate padding on pillars, side rails, headers and other upper interior components;

(c) having an occupant restraint system which is inadequately designed and constructed and fails to provide a reasonable degree of occupant restraint and safety for front seat occupants who may be involved in side impacts, thereby subjecting these oc-

cupants to severe and catastrophic injuries;

(d) failing to adequately warn Mr. Ellison, other consumers, or the public in general, about the unsafe and defective condition and design of the vehicle known to Ford, so that individuals like Mr. Ellison could make informed and prudent decisions regarding traveling or riding in such vehicles;

(e) failing to implement safe, technologically feasible, and economically practical design alternatives which would have mitigated or cured the design defects noted above.

(*Id.* ¶ 15.) In count two of their Complaint, Plaintiffs allege that Defendant was negligent "in designing, inspecting, testing, manufacturing, assembling, marketing, selling and providing warnings" for the subject vehicle. (*Id.* ¶ 18.) Count three of Plaintiffs' Complaint asserts that Defendant "breached its implied warranty of merchantability by selling the F–250 when it was not fit for the ordinary purpose for which such goods are sold." (*Id.* ¶ 21.) Count four of Plaintiffs' Complaint contains a loss of consortium claim asserted by Mrs. Ellison. (*Id.* ¶¶ 23–25.) In count five of their Complaint, Plaintiffs assert a punitive damages claim. (*Id.* ¶¶ 26–27.)

On June 18, 2009, Defendant filed a Motion for Summary Judgment, arguing that no genuine dispute remains as to any of Plaintiffs' claims. (Docket Entry No. 114.) The briefing process for that Motion is complete, and the Court therefore finds that the Motion is ripe for resolution by the Court.

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) authorizes summary judgment when "there is no genuine issue as to any material fact" and "the moving party is entitled

to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of showing the Court that summary judgment is appropriate, and may satisfy this burden by pointing to materials in the record. *Reese v. Herbert,* 527 F.3d 1253, 1269 (11th Cir.2008) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *Allen v. Bd. of Public Educ. for Bibb County,* 495 F.3d 1306, 1313 (11th Cir.2007). Once the moving party has supported its motion adequately, the non-movant has the burden of showing summary judgment is improper by coming forward with specific facts that demonstrate the existence of a genuine issue for trial. *Allen,* 495 F.3d at 1314.

When evaluating a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Optimum Techs., Inc.,* 496 F.3d at 1241. The Court also must " 'resolve all reasonable doubts about the facts in favor of the non-movant.' " *Rioux v. City of Atlanta, Ga.,* 520 F.3d 1269, 1274 (11th Cir.2008) (quoting *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.,* 894 F.2d 1555, 1558 (11th Cir.1990)). Further, the Court may not make credibility determinations, weigh conflicting evidence to resolve disputed factual issues, or assess the quality of the evidence presented. *Reese,* 527 F.3d at 1271; *Skop v. City of Atlanta, Ga.,* 485 F.3d 1130, 1140 (11th Cir.2007). Finally, the Court does not make factual determinations. *In re Celotex Corp.,* 487 F.3d at 1328.

## III. Discussion

### A. Design Defect Claims

Plaintiffs assert that the subject vehicle was defectively designed because the subject vehicle did not include a side impact airbag system that provided head impact protection. Defendant contends that FMVSS 208 preempts this claim.[2] Plaintiffs, on the other hand, argue that FMVSS 214, not FMVSS 208, is the applicable FMVSS for this case, and that FMVSS 214 does not preempt Plaintiffs' claim.

The Court first must determine whether FMVSS 208 or FMVSS 214 governs Plaintiffs' claim. FMVSS 208, 49 C.F.R. § 571.208, "specifies performance requirements for the protection of vehicle occupants in crashes." 49 C.F.R. § 571.208, S1 (2003). The purpose of FMVSS 208 "is to reduce the number of deaths of vehicle occupants, and the severity of injuries, by specifying vehicle crashworthiness requirements in terms of forces and accelerations measured on anthropomorphic dummies in test crashes, and by specifying equipment requirements for active and passive restraint systems." *Id.,* S2. FMVSS 208 does not expressly state that its application is limited to frontal impact collisions. *Id.*

FMVSS 214, 49 C.F.R. § 571.214, "specifies performance requirements for protection of occupants in side impact crashes." 49 C.F.R. § 571.214, S1(a) (2003). FMVSS 214's purpose "is to reduce the risk of serious and fatal injury to occupants of passenger cars, multipurpose passenger vehicles, trucks and buses in side impact crashes by specifying vehicle crash-

**2.** Plaintiffs failed to respond to Defendant's contention that Plaintiffs had no competent evidence to support their design defect claims based on allegedly inadequate padding on pillars, side rails, headers, and other upper interior components. The Court therefore finds that Plaintiffs have abandoned any such claims. *Roberson v. Allied Automotive Group,* No. 1:06–CV–0896–RWS, 2009 WL 1795824, at *6 (N.D.Ga. June 24, 2009) (collecting cases).

worthiness requirements in terms of accelerations measured on anthropomorphic dummies in test crashes, by specifying strength requirements for side doors, and by other means." *Id.,* S1(b). FMVSS 214, however, does not purport to address airbags or other occupant restraint systems, and simply mentions seat belts in connection with requiring that, in side-impact crash tests, the dummy used should be restrained using whatever "belt restraints are provided." *Id.*

For the following reasons, the Court finds that FMVSS 208 indeed applies to this case. Plaintiffs' claim is simply that the design of the subject vehicle was unreasonably dangerous because the subject vehicle failed to include a side impact airbag system that provided head protection. Plaintiffs do not assert that the subject vehicle failed to meet the side impact crashworthiness requirements or door strength requirements of FMVSS 214. Instead, Plaintiffs' claim essentially challenges the type of restraint systems present in the subject vehicle—a matter that FMVSS 208 governs. Under those circumstances, the Court concludes that FMVSS 208, not FMVSS 214, applies to Plaintiffs' claim.

As previously noted, "FMVSS 208 establishes the types of passenger restraint systems which car and truck manufacturers must install in their vehicles." *Griffith v. General Motors Corp.,* 303 F.3d 1276, 1279 (11th Cir.2002). FMVSS 208 does not mandate that a manufacturer use any particular type of restraint, but simply requires manufacturers to choose among several specific options when installing restraint systems in passenger cars and trucks. *Id.*

In 2003 and 2004, FMVSS 208 provided that "[t]rucks and multipurpose passenger vehicles manufactured on or after September 1, 1991 with ... a GVWR o[f] more than 8,500 pounds but not more greater

than 10,000 pounds ... shall meet the requirements of S4.1.2.1, or, at the option of the manufacturer, S4.1.2.2 or S4.1.2.3...." 49 C.F.R. § 571.208, S.4.2.3. S4.1.2.1 allows a manufacturer to use a "frontal/angular automatic protection system." *Id.,* S.4.1.2.1. A vehicle using that system shall:

(a) At each front outboard designated seating position meet the frontal crash protection requirements of S5.1 by means that require no action by vehicle occupants;

(b) At the front center designated seating position and at each rear designated seating position have a Type 1 or Type 2 seat belt assembly that conforms to Standard No. 209 and to S7.1 and S7.2; and

(c) Either.

(1) Meet the lateral crash protection requirements of S5.2 and the rollover crash protection requirements of S5.3 by means that require no action by vehicle occupants; or

(2) At each front outboard designated seating position have a Type 1 or Type 2 seat belt assembly that conforms to Standard No. 209 and S7.1 through S7.3, and that meets the requirements of S5.1 with front test dummies as required by S5.1, restrained by the Type 1 or Type 2 seat belt assembly (or the pelvic portion of any Type 2 seat belt assembly which has a detachable upper torso belt) in addition to the means that require no action by the vehicle occupant.

*Id.*

Here, the subject vehicle had frontal impact airbags in the driver and front passenger seating positions, knee bolsters in front seating positions, a collapsible steering column, and additional passive oc-

cupant protection devices. (Slater Aff. ¶ 9.) That equipment satisfied paragraph (a) of S4.1.2.1. The subject vehicle also had a seatbelt assembly that satisfied paragraph (b) of S4.1.2.1. (*Id.* ¶ 10.) Finally, the subject vehicle had lap or lap/shoulder seatbelt assemblies at its front driver and passenger seating positions, and satisfied frontal and angular crash protection requirements set forth in S5.1. (*Id.* ¶ 11.) That equipment satisfied S.4.1.2.1(c)(2). (*Id.*) Consequently, the subject vehicle satisfied S4.1.2.1's requirements for a front/angular automatic protection system.

■ Defendant contends that FMVSS 208 preempts Plaintiffs' design defect claim based on Defendant's failure to install side impact airbags that provided head protection in the subject vehicle. " 'Conflict preemption exists where state law actually conflicts with federal law, making it impossible to comply with both, or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Griffith,* 303 F.3d at 1279 (quoting *Irving v. Mazda Motor Corp.,* 136 F.3d 764, 768 (11th Cir.1998)) (internal quotation marks omitted).

The Supreme Court previously found that such a conflict existed between FMVSS 208 and a plaintiff's claim that a defendant automobile manufacturer, which selected one of the no-air-bag options provided by FMVSS 208, should have equipped its automobile with front airbags. *Geier v. American Honda Motor Co.,* 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000). The Supreme Court concluded that FMVSS 208 was designed to provide manufacturers with passive restraint options, while also maintaining traditional manual restraint options. *Id.* at 875, 120 S.Ct. 1913. The plaintiff's suit, however, would have established a rule that manufacturers must install an airbag in every automobile. *Id.* at 881, 120 S.Ct. 1913.

The Supreme Court reasoned that this result would conflict with the Department of Transportation's ("DOT") judgment that "safety would best be promoted if manufacturers installed alternative protection systems in their fleets rather than one particular system in every car," and concluded that FMVSS 208 therefore preempted the plaintiffs claim. *Id.* at 881, 120 S.Ct. 1913.

The United States Court of Appeals for the Eleventh Circuit has concluded that *Geier's* holding is not limited simply "to claims seeking to force manufacturers to select some sort of passive restraint option for their vehicles." *Griffith,* 303 F.3d at 1280. In *Griffith,* the plaintiff asserted that a 1990 Chevrolet Silverado C1500 pickup truck was defectively designed because its center seating position was equipped only with a lap belt restraint system, instead of a lap-shoulder belt restraint system. *Id.* at 1278. The plaintiff argued that FMVSS 208 did not preempt her claim because her claim did not "stand as an 'obstacle' to the achievement of the passive restraint objectives embodied in FMVSS 208." *Id.*

The Eleventh Circuit rejected the plaintiff's argument, and concluded that FMVSS 208 indeed preempted the plaintiff's claim. 303 F.3d at 1280–82. The court observed that the Supreme Court's *Geier* decision and the Eleventh Circuit's own previous cases addressing preemption under FMVSS 208 did not analyze the preemptive effect of FMVSS 208 "as a function of a distinction between passive and manual restraint systems." *Id.* at 1280. Instead, the Eleventh Circuit noted, the Supreme Court and the Eleventh Circuit had "framed the issue of one of intent." *Id.* Under that approach, the courts asked: "In implementing the Congressional mandate to reduce the number of vehicular deaths, did DOT intend to establish

only certain minimum safety standards, beyond which a state would be free to require more, or did it deliberately design a regulatory scheme which provides specific passenger restraint options, no one of which would state law be free to foreclose?" *Id.* at 1280–81.

The Eleventh Circuit observed:

In *Geier*, the Court found that the rule-making history of FMVSS 208 makes clear that DOT saw it not merely as a minimum standard, but as a comprehensive regulatory scheme. DOT intended and expected FMVSS 208 to produce a mix of restraint devices, both passive and manual, in cars and trucks. DOT'S own contemporaneous explanation of FMVSS 208 was that it believed this mix would maximize the likelihood that people would actually use the passenger restraint systems installed in their cars and trucks. "Geier's suit, on the other hand, would have eliminated this "mix." It would have forced manufacturers (at least in the District of Columbia where the suit was brought) to install air bags in their vehicles by establishing the rule that "no air bag" is a passenger restraint design defect." Since such a rule would conflict with the purposes of the federal statute, the Court held that Geier's suit was preempted.

*Id.* at 1281 (citations and footnote omitted).

Applying *Geier*, the Eleventh Circuit concluded in *Griffith* that FMVSS 208 preempted the plaintiff's design defect claim based on the defendant manufacturer's selection of a lap belt only design for the Silverado's front center seat. 303 F.3d at 1282. The Eleventh Circuit reasoned that, if the plaintiffs suit succeeded, it "would foreclose an option specifically per-

mitted by FMVSS 208." *Id.* Consequently, the Eleventh Circuit found that FMVSS 208 preempted the claim.

■ Here, Plaintiffs' design defect claim seeks to require Defendant to install a side impact air bag system that would provide head protection. This claim, like the plaintiff's claim in *Griffith*, would require Defendant to adopt an additional crash protection system not specified in FMVSS 208, and essentially would foreclose the option specifically allowed by FMVSS 208—to include either manual Type 1 or Type 2 seat belts or to include passive restraints.[3] Applying *Griffith*, the Court concludes that FMVSS 208 preempts Plaintiffs' design defect claim based on lack of a side airbag system providing head protection.

The Court observes that cases from other jurisdictions also have reached similar conclusions with respect to design defect claims based on the lack of a side airbag. For instance, in *Anthony v. Abbott*, 289 F.Supp.2d 667 (D.Vi.2003), the District Court of the Virgin Islands concluded that FMVSS 208 preempted the plaintiff's claim that an automobile manufacturer had a duty under common law to install a side airbag. 289 F.Supp.2d at 669. The court observed that "FMVSS 208 gave the manufacturers the option of choosing among several different passive restraint mechanisms as long as they met the specified performance requirement." *Id.* The manufacturer of the allegedly defective automobile had three passive restraint options under FMVSS 208, and elected to comply with FMVSS 208 by choosing the third option. *Id.* Under those circumstances, the court concluded that the plaintiff's allegation that the manufacturer "had a duty

---

**3.** Contrary to Plaintiffs' arguments, the version of FMVSS 208 in effect in 2003 and 2004 provided manufacturers with the option of complying either by using only passive re-

straints or by using a combination of passive and active restraints for the front outboard seating positions. 49 C.F.R. § 571.208, S4.1.2.1.

under common law to install a particular passive restraint, namely, a side airbag, thus *actually conflicts* with FMVSS 208 and is implicitly pre-empted." *Id.* (emphasis in original).

Similarly, a California Superior Court concluded that FMVSS 208 preempted a design defect claim based on failure to install a side airbag. *Chase v. Ford Motor Co.*, No. 1168886, slip op. at 5–6 (Cal.Super. May 2, 2008). That court acknowledged that the vehicle at issue in that case was manufactured after FMVSS 208 required that front airbags be installed in vehicles, but concluded that this development did not foreclose preemption of the plaintiffs' claim. *Id.* at 5–6.

The Court recognizes that the *Abbott* and *Chase* decisions are not binding upon this court. The Court, however, finds that those decisions provide additional support for the Court's conclusions.

In sum, the Court concludes that FMVSS 208 preempts Plaintiffs' design defect claim based on Defendant's failure to install a side impact airbag that provided head protection in the subject vehicle. Defendant therefore is entitled to summary judgment as to that claim.

### B. Failure to Warn Claim

Plaintiffs also assert a failure to warn claim, alleging that Defendant failed to warn them adequately "about the unsafe and defective condition and design of the vehicle." Presumably, Plaintiffs allege that Defendant failed to warn them of dangers presented by the subject vehicle's lack of a side impact airbag that provided head protection.

Plaintiffs' failure to warn claim, by its very nature, is tied to Plaintiffs' design defect claim based on Defendant's failure to install a side impact airbag that provided head protection. For the reasons discussed *supra* Part III.A., FMVSS 208 preempts Plaintiffs' design defect claim.

Because Plaintiffs' failure to warn claim is tied to Plaintiffs' design defect claim, the failure to warn claim also is preempted. *Griffith*, 303 F.3d at 1282 (concluding that failure to warn claim was preempted because that claim was tied to plaintiff's preempted design defect claim based on defendant's decision to install lap-belt only restraint in center seating position of truck, rather than installing lap/shoulder-belt combination in that position). Defendant consequently is entitled to summary judgment on that claim.

### C. Breach of Warranty Claim

Defendant has moved for summary judgment with respect to Plaintiffs' claim for breach of the implied warranty of merchantability. In their response to Defendants' Motion for Summary Judgment, Plaintiffs withdrew this claim. (Pls.' Resp. Def.'s Mot. Summ. J. at 28.) The Court therefore finds that Defendant is entitled to summary judgment on this claim.

### D. Negligent Inspection, Testing, Assembly, Marketing, and Selling Claims

Defendant argues that it also is entitled to summary judgment as to any claims for negligent inspection, testing, assembly, marketing, and selling that Plaintiffs may assert. Plaintiffs failed to respond to Defendant's arguments concerning those claims, and the Court therefore finds that Plaintiffs have abandoned those claims. *Roberson*, 2009 WL 1795824, at *6 (collecting cases). The Court consequently grants Defendant's Motion for Summary Judgment as to those claims.

### E. Punitive Damages

Finally, Plaintiffs assert a claim for punitive damages. Under Georgia law, a plaintiff can succeed on a claim for punitive damages only if " 'there is a valid

claim for actual damages to which it could attach.'" *Nelson & Hill, P.A. v. Wood,* 245 Ga.App. 60, 67, 537 S.E.2d 670, 677 (2000) (quoting *Southern Gen. Ins. Co. v. Holt,* 262 Ga. 267, 270, 416 S.E.2d 274 (1992)). As previously discussed, Defendant is entitled to summary judgment on all of Plaintiffs' underlying tort claims. Under those circumstances, Plaintiffs' punitive damages claim cannot survive summary judgment. The Court therefore grants Defendant's Motion for Summary Judgment as to that claim.

## IV. Conclusion

ACCORDINGLY, the Court **GRANTS** Defendant's Motion for Summary Judgment [114], and **DISMISSES** this case. The Court **DIRECTS** the Clerk to **CLOSE** this case.